*In re* BATHWICK'S ESTATE.

1. WITNESSES—WILLS—ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS.

Testimony of an attorney as to whether a will, when first shown to him by the person who wrote it, and who consulted him professionally, contained the same language as when offered for probate, *held*, a privileged communication and properly excluded on such claim by them, although neither had an interest in the will; written instruments as well as verbal statements being communications within the rule of privilege, which attaches by reason of the confidential relation rather than by reason of the character or importance of the advice sought.

2. APPEAL AND ERROR—NEW TRIAL—DIRECTED VERDICT.

A contention that verdict should have been directed should have been raised by motion therefor, rather than on motion for new trial.

[1]Witnesses, 40 Cyc. p. 2377 (Anno); [2]Appeal and Error, 3 C. J. § 746.

3. Wills—Evidence—Question For Jury.
   Whether a paper offered for probate as a will should be allowed, *held*, under the evidence and legitimate inferences, a question for the jury, under proper instructions.

Error to Eaton; McPeek (Russell R.), J. Submitted October 18, 1927. (Docket No. 94.) Decided December 1, 1927.

Charles O. Hildreth presented for probate the last will of William J. Bathwick, deceased. The will was allowed in the probate court, and Ella Mae Rice appealed to the circuit court. Judgment for proponent. Contestant brings error. Affirmed.

*L. H. McCall* and *Peters & Marshall,* for appellant.

*C. B. Fisk Bangs,* for appellee.

Fellows, J. Deceased was about to submit to a serious operation at a hospital. The proponent's testimony tended to show that he was taken there by Mr. Throop, a relative of his deceased wife, and his physician, Dr. Schilz; that he requested Mr. Throop to prepare his will before the operation. Mr. Throop was unskilled in preparing such papers. The instrument offered for probate is as follows:

"I hereby resign all my personal property and real estate to Richard Hildreth, at my death."

It bore the signature of deceased, was witnessed by Mr. Throop and Dr. Schilz, and its due execution was established. Proponent's testimony tended to show that the paper as originally prepared did not contain the words "at my death." That after reading it deceased handed it back and suggested that these words be added which was done before its execution. Contestant called a handwriting expert who gave an opinion

---

[3]Wills, 40 Cyc. pp. 1331, 1332.

that the words "at my death" were written with a different pen and ink than that used in writing the balance of the instrument, and that they were written at a different time. The question of whether these words were in the paper when it was executed was submitted to the jury who found that they were.

Contestant called as a witness Mr. Cameron, an attorney, and after establishing that he was employed by Mr. Throop, who consulted him and showed him the proposed will, asked him:

"*Q.* I want to ask you this question: Whether that paper, the first time you saw it, contained the same language,—was in the same form that it is now?"

Mr. Cameron claimed his privilege, and it was also claimed in behalf of Mr. Throop. After discussion the court sustained the privilege. This ruling presents the meritorious question in the case.

That the privilege includes testimony as to the condition of written instruments, and that they are communications as well as verbal statements, is settled by the weight of authority. In *Coveney* v. *Tannahill,* 1 Hill (N. Y.), 33 (37 Am. Dec. 287), it was said:

"The third question proposed to the witness was, in substance: 'When did you first see the account stated, and was the evidence of a settlement indorsed on the account when you first saw it?' Although the question does not necessarily imply so much, it was understood on the hearing as intended to draw from the witness an admission that he had seen the paper in the hands of his client, or received it from him, in a different state or condition from that in which it appeared on the trial. If such was the aim of the defendants in putting the question, I think the referees were right in not allowing it to be answered. We have already seen that the attorney can not be compelled either to produce or to disclose the contents of a paper which he has received from his client; and this is so although the paper may be required as the foundation for a public prosecution. *Rex* v. *Dixon,* 3 Burr. 1687; *Rex* v. *Smith,* 1 Phil. Ev. 142. The

principle is, that all confidential communications between attorney and client, whether written or oral, are alike privileged.     If the plaintiff, at any particular time, delivered or exhibited the account to his attorney without the evidence of a settlement indorsed upon it, it was the same thing, in substance, as though he had at that time told him verbally that he had an account in that plight; and the one form of communication is, I think, as much privileged as the other."

See, also, *Brown* v. *Payson*, 6 N. H. 443; *Gray* v. *Fox*, 43 Mo. 570 (97 Am. Dec. 416); *Wheatley* v. *Williams*, 1 M. & W. 533; *Dietrich* v. *Mitchell*, 43 Ill. 40 (92 Am. Dec. 99); *Arbuckle* v. *Templeton*, 65 Vt. 205 (25 Atl. 1095).

But it was insisted that Mr. Throop had no interest in the estate, was neither an heir at law nor a beneficiary under the will, and that the privilege inures only to those who consult an attorney about a matter in which they have a personal interest.     It was upon this basis that the testimony was offered.     Counsel cite Wigmore on Evidence, but the authority does not sustain the contention.     Professor Wigmore, in laying down the general principle, says (5 Wigmore on Evidence [2d Ed.], § 2292):

"The phrasing of the general principle, so as to represent all its essentials, but only essentials, and to group them in natural sequence, is a matter of some difficulty.     The following form seems to accomplish this:     Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived."

It should be noted that the will was in the custody of Mr. Throop and that the law cast upon him certain duties (3 Comp. Laws 1915, § 13776).     Manifestly he had the right to consult an attorney for the purpose of ascertaining what such duties were.     But the reason

for the rule of privilege forbids following contestant's contention. While few people consult attorneys unless they personally have matters pending which require the advice of counsel, the object of the rule is to seal the lips of the attorney who in his confidential relation has received from his client that full and complete disclosure of facts necessary to give the proper advice. It may involve pending litigation or expected litigation. It may involve assumption of future obligations or guidance on a course of future conduct. The advice given may be as to a present condition, one liable to occur one year, or 10 or 20 years hence. It may be given on a question of present vital importance or upon a purely academic proposition. In order to obtain such advice, and safe advice, the client must communicate all the facts necessary, whether favorable to himself or against himself. The privilege attaches by reason of the confidential relation rather than by reason of the character or importance of the advice sought.

No claim was made in the court below that Mr. Throop sought advice looking to the commission of a crime or the perpetrating of a fraud. Hence no such question is before us for review. The court correctly excluded the testimony of Mr. Cameron.

At the hospital Mr. Bathwick executed another paper, referred to in the record as Exhibit 6. As this exhibit was not printed in the record, we requested at the hearing that a copy of it be sent up. This has been done, but a reading of the entire record discloses that it was not made a part of the bill of exceptions and it is doubtful if we should consider its contents. The trial judge in substance instructed the jury, doubtless at contestant's request, that if they found that deceased intended by the will offered for probate (Exhibit 1) and Exhibit 6 to make a final disposition of his property, then Exhibit 1 alone could not be allowed as his will. There was no request

for a directed verdict.    After verdict a motion was made for a new trial, one of the grounds being that the jury did not follow this instruction.    Urging this ground, it is here insisted that the evidence on this subject is all one way, is undisputed.    If this were so, contestant should have moved for a directed verdict and not raised the question for the first time on motion for a new trial.    *Tishhouse* v. *Schoenberg*, 234 Mich. 271.    But we are not persuaded that the evidence and the legitimate inference to be drawn from it is all one way, or is undisputed.    At best it presented a question for the jury.

No other assignments of error merit discussion.

The judgment will be affirmed.

SHARPE, C J., and BIRD, FLANNIGAN, WIEST, CLARK, and MCDONALD, JJ., concurred.

The late Justice SNOW took no part in this decision.