BOOTH NEWSPAPERS, INC v REGENTS OF THE UNIVERSITY
OF MICHIGAN

Docket No. 78-4262. Submitted June 8, 1979, at Lansing.—Decided
October 15, 1979.

The Board of Regents of the University of Michigan resolved, at a
public meeting, to discuss certain topics in closed session,
including a legal opinion of the University's counsel concerning
the Open Meetings Act and certain portions of an annual audit
report dealing with misuse or misappropriation of funds. Three
months later, Booth Newspapers, Inc., doing business as the
Ann Arbor News, brought an action alleging that the Board of
Regents had met several times in closed sessions contrary to
the Open Meetings Act and seeking temporary and permanent
injunctions prohibiting any further closed session discussions of
the legal opinion and audit reports. A temporary injunction
was denied. The Board of Regents alleged that the attorney's
opinion and the audit report were exempt from disclosure
under both the Open Meetings Act and the Freedom of Infor-
mation Act. The Washtenaw Circuit Court, Edward D. Deake,
J., granted summary judgment for the Board of Regents, and
plaintiff appeals. *Held:*

1. The Freedom of Information Act, which exempts from
disclosure materials subject to the attorney-client privilege, and
the Open Meetings Act, which exempts consultation with coun-
sel regarding specific pending litigation, are statutes which are
co-equal in rank. The written opinion of counsel is material
which need not be disclosed under the Freedom of Information
Act and is therefore also exempt from the requirements of the
Open Meetings Act.

2. The Board of Regents' contention that the audit reports in
question contain information of a personal nature which if
disclosed could produce an unwarranted invasion of an individ-
ual's privacy is in the nature of an affirmative defense, and the
burden of proving that defense is on the defendant. Because the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 66 Am Jur 2d, Records and Recording Laws §§ 23, 27, 29, 30.
[2] 66 Am Jur 2d, Records and Recording Laws § 44.
[4] 61 Am Jur 2d, Pleadings §§ 229, 230.

complaint stated a claim upon which relief could be granted, the Board of Regents was not entitled to summary judgment on the pleadings alone.

3. The case should be remanded and, upon motion for summary judgment by either party, the defendant should submit affidavits supporting specific allegations of why disclosure of the audit reports would lead to an invasion of privacy. The trial court may, in its discretion, examine the reports *in camera* or receive testimony.

Remanded.

1. ATTORNEY AND CLIENT — FREEDOM OF INFORMATION ACT — OPINION OF COUNSEL — STATUTES.

An opinion of counsel, addressed to a client, is within the common-law attorney-client privilege; a written opinion of counsel to a public body is material which is exempt from disclosure under the Freedom of Information Act (MCL 15.243[1][h]; MSA 4.1801[13][1][h]).

2. RECORDS — ACCESS TO PUBLIC RECORDS — BURDEN OF PROOF.

A public body which has denied access to its records bears the burden of sustaining that denial.

3. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTION FROM DISCLOSURE — AFFIRMATIVE DEFENSE — COURT RULES.

A defendant public body's contention that audit records sought by a plaintiff under the Freedom of Information Act contain information which could produce a clearly unwarranted invasion of an individual's privacy if disclosed and that the records are therefore exempt from disclosure is in the nature of an affirmative defense; such a defense need not be anticipated by the plaintiff in the complaint nor is the plaintiff ordinarily obligated to respond to such a defense when raised by the defendant (GCR 1963, 111.7).

4. JUDGMENT — SUMMARY JUDGMENT — PLEADINGS — COURT RULES.

A defendant is not entitled to judgment on the pleadings alone where the plaintiff has stated a claim upon which relief could be granted; resolution of an action on the grounds that there exists no genuine issue of material fact requires a showing of a party's inability to provide any factual basis for its legally sufficient claim or defense, and pleadings alone cannot serve this function (GCR 1963, 117.3).

*Burke, Rennell & Hood,* for plaintiff.

*Roderick K. Daane,* for defendants.

Before: DANHOF, C.J., and V. J. BRENNAN and H. R. CARROLL,* JJ.

DANHOF, C.J. At a public meeting of the Board of Regents of the University of Michigan (the Board) on June 16, 1977, it was resolved to discuss in closed session certain topics, which were set forth in the minutes of the meeting:

"(1) To consider with counsel for the University his opinion, dated June 15, 1977, concerning the Michigan Open Meeting Act, which opinion is exempt from disclosure under Section 13(1)(h) of the Michigan Freedom of Information Act.

"(2) To consider negotiations for the purchase or lease of real property, there being no option to purchase or lease presently in effect with respect to the property in question.

"(3) To consider the following material exempt from disclosure pursuant to Section 13(1)(a) of 76 PA 442, the Michigan Freedom of Information Act:

"(a) Lists of proposed salaries of named Executive Officers, Deans, and certain Directors.

"(b) A document evaluating the performance of a deanship, identifying evaluated staff members.

"(c) A compilation of candidates for the position of Vice-President for Academic Affairs, including candidates, applications and Search Committee advice.

"(d) The faculty promotion list.

"(e) Those portions of the annual report of the University Internal Audit Department dealing with investigations of misuse or misappropriation of funds and related or similar matters with potential for damage to individual reputations or to the public interest if disclosed."

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

On September 14, 1977, the plaintiff filed a complaint in the circuit court, alleging that the Board had met on numerous occasions in closed sessions not permitted by the Open Meetings Act (OMA), MCL 15.261 *et seq.;* MSA 4.1800(11) *et seq.,* to discuss topics including a "legal opinion regarding closed sessions" and "audit reports and procedures".[1] The plaintiff sought temporary and permanent injunctions against the Board prohibiting it from further closed session discussions of the topics set forth in the complaint.[2]

Temporary injunctive relief was denied. The plaintiff moved for summary judgment under the provisions of GCR 1963, 117.2(2) and (3),[3] attaching to the motion the affidavit of its reporter.[4] The Board's answer to the motion alleged that the

---

[1] The other topics alleged in the complaint to have been illegally discussed in closed sessions were salaries of executive officers and deans, the "evaluation of a deanship", review of applications for a university vice-presidency, salaries of employees of the university and faculty appointments. Only the opinion of counsel and the audit reports are at issue in this appeal.

[2] A second count sought a declaration that certain exemptions to the OMA and the Freedom of Information Act, *infra,* were unconstitutionally vague and constituted a prior restraint on the plaintiff's First Amendment rights. This issue is not before the Court in this appeal.

[3] "Grounds. The motion for summary judgment shall state that the moving party is entitled to judgment in his favor because of any 1 of the following grounds:

* * *

"(2) the opposing party has failed to state a valid defense to the claim asserted against him,

"(3) that except as to the amount of damages there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law."

[4] "Robert Cummins, being first duly sworn, deposes and says that:

"1. He is presently employed as a reporter for The Ann Arbor News in the City of Ann Arbor, Michigan.

"2. In his capacity as a reporter he has been assigned to cover meetings of the Board of Regents of The University of Michigan, and is well acquainted with the meetings that have been held by Defendant Regents during the preceding six months.

"3. The Regents have met, from time to time, in closed session to discuss and deliberate upon topics, some of which were exempt from

pleadings were incomplete, that the Board believed that valid legal defenses to the plaintiff's possessive claim existed and that there were between the parties genuine issues of material fact making summary judgment for the plaintiff inappropriate. The affidavit of the Secretary of the Board was submitted with the Board's answer.[5]

disclosure under the Open Meetings Act, and some of which were not exempt under the Open Meetings Act.

"4. Specifically, The Regents met on one occasion in June to discuss and to deliberate upon topics that are set forth in Plaintiff's Complaint.

"5. That should the Regents be permitted to continue to meet in closed session to discuss all or a portion of the topics that are raised in Plaintiff's Complaint, the public will be denied information that had previously been available to it, and to which it is now entitled to have under the provisions of the Open Meetings Act.

"6. I have examined the Plaintiff's Brief that had previously been submitted to this court in support of Plaintiff's request for injunctive relief, and believe the factual allegations asserted therein to be true.

"7. If called as a witness in this matter, I can testify competently to the facts contained with Plaintiff's Motion for Summary Judgment and Plaintiff's Brief in support of injunctive relief."

[5] "Richard L. Kennedy, being first duly sworn, deposes and says that he is, and at all times material to the above-entitled action has been, Secretary of The Regents of The University of Michigan, in which capacity he has attended all meetings of the governing Board of Regents since April 1, 1977, and has kept minutes thereof, including meetings which were open to the general public and those which were closed to the general public. Deponent says that for the months since the effective date of the Open Meetings Act and the Freedom of Information Act, the topics considered by the Board of Regents in closed session, month by month, were:

"*April*—Collective bargaining strategy

"*May*—The purchase of real property prior to the time an option to purchase same was obtained

Collective bargaining strategy

"*June*—Purchase of real property prior to the time an option to purchase same was obtained

Opinion of counsel concerning Open Meetings Act

A document evaluating the performance of a Deanship, identifying evaluated staff members

A list of proposed salaries of named Executive Officers, Deans, and certain Directors

"*July*—The purchase of real property prior to the time an option to purchase same was obtained

"*August*—The Board of Regents did not meet in August.

Several briefs were filed, including one from the Board setting forth the minutes of the June meeting, *supra.* The Board's answer to the complaint admitted that it had met in closed session to consider the written opinion of counsel regarding the OMA, but maintained that that opinion and the audit reports were exempted from open discussion by § 8(h) of the OMA because both were exempted from disclosure under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* The motion resulted in entry of summary judgment for the Board on both of the plaintiff's claims. This appeal is brought from that judgment and concerns only those two claims resolved therein.

The OMA provides, in pertinent part:

"(1) All meetings of a public body shall be open to the public and shall be held in a place available to the general public. All persons shall be permitted to attend any meeting except as otherwise provided in this act.

"(2) All decisions of a public body shall be made at a meeting open to the public." MCL 15.263(1), (2); MSA 4.1800(13)(1), (2).

"A public body may meet in closed session only for the following purposes:

\*    \*    \*

"(e) To consult with its attorney regarding trial or settlement strategy in connection with specific pending litigation, but only when an open meeting would have a detrimental financial effect on the litigating or settlement position of the public body.

---

"*September*—The purchase of real property prior to the time an option to purchase same was obtained

Collective bargaining strategy

"*October*—No closed meeting.

"Deponent further says that no topics other than those enumerated above were considered by the Regents in closed session during the months of April through October, 1977, inclusive."

*    *    *

"(h) To consider material exempt from discussion or disclosure by state or federal statute." MCL 15.268(e), (h); MSA 4.1800(18)(e), (h).

The Board's position that it was privileged to close its meetings for discussion of "material exempt from discussion or disclosure by state or federal statute" was based on the FOIA, particularly those portions which provide:

"(1) A public body may exempt from disclosure as a public record under this act:
"(a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.

*    *    *

"(h) Information or records subject to the attorney-client privilege." MCL 15.234(1)(a), (h); MSA 4.1801(13)(1)(a), (h).

The parties seem to agree that the FOIA is the sole basis of the Board's defense. Thus there is created within this action for relief under the OMA a practically separate suit in which the central issues arise under the FOIA.[6]

A public body is privileged to retire to closed session to discuss materials exempt from disclosure under the FOIA, which, in § 13(h), exempts from disclosure materials held by a public body

---

[6] This congruence of issues may be more apparent than real. The FOIA provides at MCL 15.244; MSA 4.1801(14) for the separation of exempt materials from those which must be disclosed. Strict application of FOIA exemption rules to an OMA question would prohibit a public body from discussing portions of a document in private while allowing closed session consideration of other parts. The impact of such a division on the decisional process is apparent. In such a case, FOIA disclosure of written materials might be wider in scope than the public discussion requirements of the OMA. The posture of this action makes the resolution of this issue impracticable at this time.

and "subject to the attorney-client privilege". The opinion of counsel, addressed to a client, is within the common law privilege. See *In re Bathwick's Estate*, 241 Mich 156; 216 NW 420 (1927). The OMA contains an apparently more restrictive exemption, which would allow closed session consultation with counsel only regarding "specific pending litigation". MCL 15.268(e); MSA 4.1800(18)(e). The plaintiff argues that this "specific" exemption to the OMA open meeting requirements should prevail over the "general" attorney-client exemption appropriated from the FOIA. We cannot agree with this contention. The OMA's exemption of attorney consultation and its exemption of discussions regarding materials exempt from disclosure under other statutes have been assigned equal rank by the drafter of the statute. The written opinion of counsel is "material" which need not be disclosed under the FOIA and is therefore exempt from the open meeting requirements of the OMA as well.

The parties to this appeal have debated extensively the meaning of the FOIA provision exempting from disclosure information which, if disclosed, could produce a "clearly unwarranted invasion of an individual's privacy". The noticeably hypothetical tone of the arguments and the plaintiff's repeated contention that the Board brought forth in the lower court no "evidence" in support of its exemption claim have revealed a substantial problem in summary judgment resolution of FOIA (and, in this case, OMA) actions. Our resolution of these problems makes review of the trial court's decision on the merits both unnecessary and inappropriate.

One of the Board's lower court briefs recited the minutes of the June 16, 1977, board meeting,

including the Board's description and assessment of the audit reports at issue in this litigation.[7] This description was not pleaded by the Board as its defense; however, both the parties and the court apparently regarded it as having been alleged in answer to the plaintiff's complaint.[8]

The Board acknowledges that a public body that has denied access to its records bears the burden of sustaining its denial in court.[9] Accordingly, it has been held that in order to state a cause of action under the Federal Freedom of Information Act (FOIA Federal) a complaint need not allege that the material sought is not the subject of a statutory exemption. *Television Wisconsin, Inc v NLRB*, 410 F Supp 999 (D Wis, 1976). Exemption is a defense in actions under the FOIA.

Any defense posture which "by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim set forth in the plaintiff's complaint" is in the nature of an affirmative defense. GCR 1963, 111.7. The Board's contentions that the audit reports in question contained "information of a personal nature" which could produce a "clearly unwarranted invasion of an individual's privacy" if disclosed to the public asserts such

---

[7] "Those portions of the annual report of the University Internal Audit Department dealing with investigations of misuse or misappropriation of funds and related or similar matters with potential for damage to individual reputations or to the public interest if disclosed."

[8] At oral argument before this Court, counsel for the Board stated that this description, never countered by the plaintiff, formed the sole basis of the lower court judgment.

[9] "The court shall determine the matter *de novo* and the burden is on the public body to sustain its denial." MCL 15.240; MSA 4.1801(10).

This principle is applied under the FOIA-Federal as well. See 5 USC 552(a)(4)(B); *Robles v Environmental Protection Agency*, 484 F2d 843 (CA 4, 1973). Public records are "prima facie discloseable" to any person who makes an adequate request. *Kent Corp v NLRB*, 530 F2d 612 (CA 5, 1976). See also MCL 15.233; MSA 4.1801(3).

"other affirmative matter" and falls quite comfortably within this definition. A plaintiff need not anticipate an affirmative defense in its complaint and ordinarily is not obligated to respond to such a defense when it is raised by an opponent. *Simonson v Michigan Life Ins Co,* 37 Mich App 79; 194 NW2d 446 (1971), GCR 1963, 110.1. An affirmative defense cannot succeed unless the matters upon which it rests are proved. The burden of producing evidence and establishing these facts rests upon the defendant. *Pollack v Oak Office Building,* 7 Mich App 173; 151 NW2d 353 (1967).

A plaintiff asserting a FOIA claim faces a disadvantage seldom encountered in other litigation, in that necessarily only the public body holding the information can speak confidently regarding the nature of the material and the circumstances of its preparation and use which might support an exemption defense. The allocation of the burdens of pleading and proof described in the preceding paragraphs is therefore especially well suited for application to FOIA actions.

Entry of summary judgment in favor of a party opposing an opponent's motion therefor is controlled by GCR 1963, 117.3, which provides:

".3 Motion and Proceedings Thereon. A motion based upon sub-rule 117.2(3) shall be supported by affidavits, and the opposing party prior to the day of hearing may serve opposing affidavits. The affidavits submitted by either party shall be governed by the provisions of sub-rules 116.4, 116.5, and 116.6. Such affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties shall be considered by the court at the hearing. Each party shall be given opportunity to amend his pleadings as provided by Rule 118 unless the evidence then before the court shows amendment would not be justified. Judgment shall be rendered forthwith if

the pleadings show that any party is entitled to judgment as a matter of law or if the affidavits or other proof show that there is no genuine issue of fact. If it appears that the opposing party rather than the moving party is entitled to judgment, the court may render summary judgment in his favor without necessity of a motion therefor."

This rule authorizes summary judgment only if "the pleadings show that any party is entitled to judgment as a matter of law" or if the "affidavits, together with the pleadings, depositions, admissions and documentary evidence" show that there exists between the positions of the parties no genuine issue of material fact.

The complaint in this action stated a claim upon which relief could be granted; the plaintiff was not required to reply to the Board's affirmative defense of exemption. Therefore, the Board was not entitled to judgment on the pleadings alone. *Cf., Neada v State Farm Life Ins Co,* 324 Mich 233; 36 NW2d 904 (1949).

Resolution of an action on the grounds that there exists no genuine issue of material fact requires a showing of a party's inability to provide any factual basis for its legally sufficient claim or defense. *Carry v Consumers Power Co,* 64 Mich App 292; 235 NW2d 765 (1975), *Smith v Woronoff,* 75 Mich App 24; 254 NW2d 637 (1977). Pleadings alone cannot serve this function. Our inspection of the record finds it devoid of any indication outside the pleadings[10] that the audit report might be the subject of a valid exemption under the FOIA. If the Board desired summary disposition of its affirmative defense, it was incumbent upon it to offer to the trial court affidavits or other materials

---

[10] We include in the "pleadings" the defendant's recitation of the Board's open meeting description of the audit reports.

sufficient to show that failure of its defense was factually impossible. In the absence of such an offer by the Board, the summary judgment cannot stand.

If it is clear that courts cannot simply accept government allegations that material sought in FOIA litigation is protected by statutory exemption, it is equally apparent that disclosure of the material in order to prove the defense would defeat the purposes of exemption altogether. Whether FOIA exemption claims are resolved in summary judgment proceedings or ordinary trials, the unusual nature of the FOIA action requires a certain amount of creativity in solving proof and procedure difficulties.

One device developed in FOIA Federal litigation and employed in both summary judgment and trial settings is *in camera* inspection of the materials under consideration. When a substantial amount of information is sought, this procedure can place a sizable burden on the trial court. See *Environmental Protection Agency v Mink,* 410 US 73, 92-93; 93 S Ct 827; 35 L Ed 2d 119 (1973). It has also been observed that *in camera* inspection avoids the adversarial process upon which judicial dispute resolution has come to rely, forcing the trial court to take upon itself the evaluation of the government's claims without benefit of "criticism and illumination by a party with the actual interest in forcing disclosure". *Vaughn v Rosen,* 157 US App DC 340, 345; 484 F2d 820, 825 (1973).

A second method which has found considerable use in the Federal courts is the requirement that the body seeking to sustain its secrecy submit affidavits describing the disputed materials in sufficient detail to allow effective argument by the seeker and a fully informed decision by the court.

See, *e.g., Vaughn v Rosen, supra, EPA v Mink, supra, Mobile Oil Corp v Federal Trade Comm,* 406 F.Supp 305 (SD NY, 1976), *Mead Data Central, Inc v United States Dept of Air Force,* 184 US App DC 350; 566 F2d 242 (1977). The affidavits need not reveal the information the government claims is exempt from disclosure, but neither may an acceptable affidavit merely restate the legal conclusions contained in the government's answer. In *Vaughn, supra,* the Court stated:

"The problem of assuring that allegations of exempt status are adequately justified is the most obvious and the most easily remedied flaw in current procedures. It may be corrected by assuring government agencies that courts will simply no longer accept conclusory and generalized allegations of exemptions, such as the trial court was treated to in this case, but will require a relatively detailed analysis in manageable segments. An analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be composed without excessive reference to the actual language of the document." 157 US App DC at 346-347; 484 F2d at 826-827.

In *Mead Data, supra,* it was held that the government could not have summary judgment unless it provided:

"a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." 184 US App DC at 359; 566 F2d at 251.

Testimony is a third device which may be added to affidavit presentations and *in camera* inspection

in apprising the court of the validity of the government's claim. *Mink, supra.*

In the case at bar, there is no indication that the Board could not have justified its exemption claim without disclosing so much of the information contained in the audit reports as to endanger the privacy of the individuals the Board rightfully sought to protect. The defendant might have started its defense with more specific (but anonymous) allegations in its answer, stating the reasons why an invasion of privacy would result from disclosure of the reports. In offering to show the factual basis for its claim, the Board could have supplied affidavits supporting those allegations. The trial court, in turn, could have exercised its discretion in proceeding to take testimony or examine the reports *in camera.*[11]

On remand, either the plaintiff or the defendant may move for summary judgment. If the motion is submitted by the plaintiff, the trial court may exercise its discretion and choose whether to require a cross motion from the Board. Summary judgment shall not issue for the Board unless the affidavits submitted (or the testimony or *in camera* inspection of the reports, if any) show that the Board is entitled to judgment.

Remanded for proceedings not inconsistent with this opinion. No costs, a public question.

---

[11] In practice, the procedures outlined in this opinion will likely make the hearing on a motion for summary judgment and the trial proper nearly indistinguishable. Where, as here, the exemption is for all practical purposes proved when the nature of the disputed material is established on motion for summary judgment, there will seldom be reason to move to trial on the merits. Lest the plaintiff's obvious inability to obtain summary jdgment on the strength of affidavits it can produce leave the initiative in the hands of possibly unwilling public bodies, we recommend to the trial courts their power to order submission of cross-motions for summary judgment. See *Congregation B'nai Sholom v Martin,* 382 Mich 659; 173 NW2d 504 (1969).