*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HASSAN M. AHMAD,

        Plaintiff-Appellant,

v

UNIVERSITY OF MICHIGAN,

        Defendant-Appellee.

UNPUBLISHED
June 20, 2019

No. 341299
Court of Claims
LC No. 17-000170-MZ

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

In this action brought under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, plaintiff, Hassan M. Ahmad, appeals as of right the November 20, 2017 order of the Court of Claims granting summary disposition in favor of defendant, the University of Michigan ("the University"), pursuant to MCR 2.116(C)(8) (failure to state a claim). Because plaintiff alleged sufficient facts to establish a prima facie claim under the FOIA, we reverse the judgment of the Court of Claims and remand.

## I. BASIC FACTS

Plaintiff challenges the University's denial of his FOIA request. Dr. John Tanton—"an ophthalmologist and conservationist," according to the University, and "a figure widely regarded as the grandfather of the anti-immigration movements," according to plaintiff—donated his personal writings, correspondence, and research (collectively, "the Tanton papers") to the Bentley Library's collection. His donation included 25 boxes of papers, but boxes 15-25 were to remain closed for 25 years from the date of accession, i.e., until April 2035, purportedly in accordance with the terms of the gift.[1]

---

[1] The University indicates that the restriction is memorialized in a charitable gift agreement, but that agreement is not contained in the lower court record. Regardless, plaintiff in his complaint has referenced the existence of the agreement and has acknowledged that the records were

Plaintiff filed a FOIA request with the University, seeking all of the Tanton papers, including those found in boxes 15-25 and marked as "closed." The University eventually denied plaintiff's request, asserting that the Tanton papers were closed to research until April 2035 and were therefore not "public records" subject to FOIA disclosure because they were not "utilized, possessed, or retained in the performance of any official University function."

Following plaintiff's unsuccessful administrative appeal, he filed suit in the Court of Claims. The Court of Claims granted the University's motion for summary disposition, concluding that the Tanton papers are not "public records." This appeal followed.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo on appeal. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition under MCR 2.116(C)(8) is appropriately granted if the plaintiff has failed to state a claim on which relief can be granted. "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. . . . A motion under MCR 2.116(C)(8) may be granted only where the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119 (quotations marks and citations omitted). In reviewing the sufficiency of a complaint, a court accepts as true and construes in a light most favorable to the nonmovant all well-pleaded factual allegations. *Id.* And when deciding a motion brought under this subrule, a court considers only the pleadings. *Id*. at 119-120.

The interpretation and application of a statute is a question of law that this Court reviews de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. [*Id*. at 311-312 (citations omitted).]

Finally, we also review legal determinations under the FOIA de novo. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006).

## III. WHAT CONSTITUTES A "PUBLIC RECORD" UNDER THE FOIA

---

"marked 'closed for 25 years from the date of accession, or until April 6, 2035.' " Further, attachments to plaintiff's complaint show that the records were "closed to research until April 2035."

Unless an exception applies, a person who provides a proper written request for a public record is entitled to " 'inspect, copy, or receive copies of the requested public record of the public body.' " *Amberg v Dearborn*, 497 Mich 28, 30; 859 NW2d 674 (2014), quoting MCL 15.233(1). Defendant argues that the Tanton papers are not subject to disclosure under the FOIA because under the terms of the gift agreement, they never became public records, and only public records are subject to FOIA disclosure. See MCL 15.233(1).

Under the FOIA, a " '[p]ublic record' means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." MCL 15.232(i).[2] Thus, the sole issue before us is whether plaintiff alleged facts sufficient to show that the Tanton papers constitute a public record under the FOIA. Here, there is no doubt that plaintiff adequately alleged that the University had "possession of" or "retained" the documents at issue. Accordingly, the only question remaining is whether said possession or retention was alleged to have been done "in the performance of an official function."

While the FOIA defines what constitutes a "public record," it does not define what constitutes an "official function." When a statute does not define a term, we are to give the term its plain and ordinary meaning. *Williams v Kennedy*, 316 Mich App 612, 616; 891 NW2d 907 (2016); see also *Kestenbaum v Mich State Univ*, 414 Mich 510, 538; 327 NW2d 783 (1982) (opinion by RYAN, J.) (noting that because "official function" is not defined in the FOIA, "the term must be construed according to its commonly accepted and generally understood meaning"). We may consult a dictionary in ascertaining plain meanings. *Williams*, 316 Mich App at 616. "Official" is defined, in pertinent part, as "AUTHORITATIVE, AUTHORIZED." *Merriam-Webster's Collegiate Dictionary* (11th ed). And "function" is defined as "the acts or operations expected of a person or thing." *Id*. Thus, an "official function" of the Bentley Library, as intended under the FOIA, includes those authorized acts or operations that are expected of the Library as it relates to its position as a public library. In order to help determine whether any given act or operation is authorized, we turn to the University's bylaws.

The University's bylaws provide that the Bentley Library's historical collection is "maintained for the purpose of *collecting*, *preserving*, and *making available to students* manuscripts and other materials pertaining to the state, its institutions, and its social, economic, and intellectual development."[3] Bylaws, § 12.04 (emphasis added). The University does not

---

[2] The definition for "public record" can now be found in MCL 15.232(i), but the definition was located at MCL 15.232(e) prior to the June 17, 2018 effective date of 2018 PA 68.

[3] The bylaws of the Board of Regents comprise the rules concerning the more important matters of general University organization and policy rather than administrative details and specific technical requirements of the several fields of instruction. The bylaws are adopted directly by the Board of Regents in the exercise of the Board's legislative powers and thus are binding authority on the University. See University of Michigan Board of Regents, *Bylaws Preface* <http://regents.umich.edu/bylaws/bylaws_pref.html> (accessed June 4, 2019). Chapter XII of the Bylaws pertains the University's libraries, with § 12.04 pertaining specifically to the Bentley

dispute that it had collected and possessed the Tanton papers but instead argues that because the papers had never been made available to anyone, let alone students, then the papers cannot constitute a public record. In making this argument, the University says that in order to qualify as a "public record" for FOIA purposes, all three aspects of the bylaws' stated purpose are required to have been accomplished. The University primarily relies on the conjunctive "and" in the list, "collecting, preserving, *and* making available to students." (Emphasis added.) However, we believe that the University is reading the conjunctive "and" in this context incorrectly.

We agree with the University that the purpose for the Library's existence is defined as having three distinct aspects, which are indeed provided for in the conjunctive, i.e., collecting, preserving, *and* making available to students the Library's materials. We generally are to read the conjunctive word "and" as a true conjunctive, see *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n (On Remand)*, 317 Mich App 1, 14; 894 NW2d 758 (2016); *People v Comella*, 296 Mich App 643, 649; 823 NW2d 138 (2012) (both cases explaining that the words "and" and "or" are not interchangeable and their strict meanings, including the conjunctive meaning of "and," should be followed unless legislative intent shows otherwise); *OfficeMax, Inc v United States*, 428 F3d 583, 589 (CA 6, 2005) ("[T]he Supreme Court has said that 'and' presumptively should be read in its 'ordinary' conjunctive sense unless the 'context' in which the term is used or 'other provisions of the statute' dictate a contrary interpretation."). However, as the cases above show, the meaning of "and" and "or" may be flexible depending on context. *Heckathorn v Heckathorn*, 284 Mich 677, 681-682; 280 NW 79 (1938). We do not read this list as requiring all three aspects *to have been completed* in order for the Library to have been acting in furtherance of its purpose, as described in the bylaws.

Because the Tanton papers have never been made available to students, if the University's construction of the statute were correct, then none of what it has done to date with respect to the papers has been in the performance of an official function. The flaw with the University's argument is that while all three aspects of the Library's purpose are relevant to the Library's purpose and mission, they do not each have to have been completed in order for the Library's acts to have been in furtherance of its purpose. Instead, from the context of the bylaws, all that is required is that the Library's actions were done *with the intention* that all three aspects of its stated purpose were to be fulfilled. This interpretation gives the conjunction "and" in the bylaws its proper meaning. For example, the act of presently collecting and acquiring papers that the Library intends to preserve and make available to students at a future date would be in the performance of its official function. But the act of acquiring writings or documents that the University has no intention of ever making available to students would not be in the performance of its official function. Therefore, the Library doing any act in furtherance of any single aspect

---

Library. University of Michigan Board of Regents, *Chapter XII. The University Libraries* <http://regents.umich.edu/bylaws/bylaws12.html> (accessed June 4, 2019).

of its stated purpose, while intending to accomplish the other aspects, is doing the act "in the performance of an official function."[4]

Here, plaintiff sufficiently pled that defendant was storing and maintaining the Tanton papers, which is consistent with the stated purposes of the Library's official functions. The fact that those materials were not subject to disclosure to students or research does not detract from the fact that the act of keeping those materials is part of the Library's purpose. Importantly, plaintiff's complaint can be read to allege that the Tanton papers were "closed" to research until April 2035. The clear implication is that the University was holding the papers with the intent to open them to research (and students) at that later time. Thus, the University's acts of collecting and preserving the papers were in furtherance of its official purpose. Accordingly, we read the complaint as alleging that defendant "maintained the records" in the performance of an official function, which, under FOIA's definitions, renders them "public records." Therefore, contrary to the ruling of the Court of Claims, the complaint states a valid claim that the papers are public records.

Further, the Michigan Community Foundation Act (MCFA), MCL 123.901 *et seq*., and its predecessor act, 1921 PA 136, support our conclusion that the Library's act of holding onto the Tanton papers was an official or "authorized" function. MCL 123.905(3) of the MCFA states:

> A public library may receive and accept gifts and donations of real, personal, or intangible personal property, for the library, and shall hold, use, and

---

[4] To the extent the University argues that disclosure "would likely dissuade other similarly situated individuals from donating private papers of historical significance to public institutions," or more generally frustrate public policy, we note that any such public policy consideration is for the Legislature to make. We do no more here than construe the public policy choice which the Legislature has enshrined in current law; it remains free to change that public policy as it sees fit, although we are not free to make such public policy choices. See *Robinson v Detroit*, 462 Mich 439, 474; 613 NW2d 307 (2000) (CORRIGAN, J., concurring) ("[A] Court exceeds the limit of its constitutional authority when it substitutes its policy choice for that of the Legislature."). Indeed, the Legislature appears to have provided a method that protects such donors through its enactment of MCL 397.381, 1921 PA 136, and, more recently, the Michigan Community Foundation Act (MCFA), MCL 123.901 *et seq*. See discussion, *infra*, in this opinion.

In addition to any protections afforded by the Legislature through its passage of acts such as the MCFA, future donors could ensure the privacy of their papers during their lifetimes, as Dr. Tanton apparently sought to do, by donating them to a public university through a will. Dr. Tanton donated his papers during his lifetime, transferring the title and the copyright at that time. Had he instead maintained ownership and control during his lifetime and only left the papers to the University by way of a will, the papers could not have become public records during his lifetime, as they would not have been "prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function," MCL 15.232(i), until after his death.

apply the property received for the purposes, in accordance with the provisions, and subject to the conditions and limitations, if any, set forth in the instrument of gift.[5]

Thus, a public library receiving a gift is authorized by statute to "hold, use, and apply" the gift for the purposes set forth in the donor's agreement, subject to any conditions or limitations expressly made. Therefore, the Bentley Library carries out an "official function" as it relates to its gifts and donations when it holds onto such gifts and donations in accordance with the donation agreement.[6]

Reversed and remanded for proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

---

[5] We note that at the time plaintiff made his FOIA request to the University, MCL 397.381(1) was in effect and was substantively the same as the later-enacted MCFA, which became effective before the Court of Claims issued its ruling and which also repealed MCL 397.381(1). See 2017 PA 38.

[6] We had asked the parties to file supplemental briefing in regard to the applicability of the MCL 123.905(3) and how its application may support granting defendant's motion for summary disposition under MCR 2.116(C)(8). However, after reviewing the briefing, we have determined that the University cannot rely on MCL 123.905(3), or its predecessor, MCL 397.381(1), to dismiss plaintiff's action under MCR 2.116(C)(8). That is because, assuming the University is required to not disclose the Tanton papers under the terms of the gift instrument, this fact relates to an affirmative defense the University may raise. See MCL 15.243(d); *Messenger v Consumer & Ind Serv*, 238 Mich App 524, 536; 606 NW2d 38 (1999); *Detroit News, Inc v Detroit*, 185 Mich App 296, 300; 460 NW2d 312 (1990). And affirmative defenses generally are not implicated in a motion brought under MCR 2.116(C)(8). See *Booth Newspapers, Inc v Regents of the Univ of Mich*, 93 Mich App 100, 109; 286 NW2d 55 (1979). We offer no opinion on how either MCL 123.905(3) or its predecessor, MCL 397.381(1), might affect an analysis under MCR 2.116(C)(10) or at trial.