**Samuel L. GUY, Plaintiff,**

v.

**JUDICIAL NOMINATING COMMISSION (State of Delaware), Defendant.**

**Civ. A. No. 94M–06–053.**

Superior Court of Delaware,
New Castle County.

Submitted: Jan. 12, 1995.
Decided: April 7, 1995.

Samuel L. Guy, Wilmington, pro se.

Richard G. Elliott, Jr., and John T. Dorsey, Richards, Layton & Finger, Wilmington, Leo E. Strine, Jr., Office of the Governor, Wilmington, Marsha Kramarck, Deputy Atty. Gen., Wilmington, for defendant.

## OPINION

RIDGELY, President Judge.

This is a declaratory judgment and mandamus action based upon Delaware's Freedom of Information Act, 29 *Del.C.* ch. 100 ("the Act"). Plaintiff Samuel L. Guy sought access to the records of the Judicial Nominating Commission ("Commission") concerning prospective nominees for the Governor to a judicial vacancy on the Delaware Supreme Court. After the Commission denied the request, Plaintiff brought this action against the Commission seeking a declaration that the requested records are public records and an order compelling the Commission to make the records available for his inspection and copying. Before the Court is the Commission's motion for summary judgment and Plaintiff's motion to amend the complaint.

For the reasons which follow, the Court holds that the doctrine of executive privilege protects the confidentiality of the records compiled by the Commission at the behest of the Governor and that those records are exempt from disclosure under § 10002(d)(6) of the Act. Plaintiff's proposed amendments to the complaint would not entitle him to relief under the Act. Accordingly, the Court concludes that the motion to amend must be denied and that summary judgment must be granted to the Commission.

## I. Background

The record before this Court is sparse, but sufficient to decide the motions presented. The record consists of the pleadings and copies of Executive Order No. 3 and Executive Order No. 10 approved by Governor Thomas R. Carper on March 29, 1993 and August 20, 1993 respectively. Pursuant to Executive Order No. 3, the Judicial Nominating Commission is authorized to continue to assist the Governor regarding judicial appointments.[1] The present Commission consists of nine members, eight of whom are appointed by the Governor, the ninth being appointed by the Executive Committee of the Delaware State Bar Association. Its mandate is to find "highly qualified candidates for judgeships to which the Governor is empowered to make appointments." Executive Order No. 3 at 2. Members of the Commission receive no compensation, but are reimbursed for expenses incurred in the performance of their duties.

Executive Order No. 3 imposes a requirement of confidentiality upon the Commission by the Governor and reserves any applicable privilege. Paragraph 6 of this Executive Order states:

> All records and deliberations with respect to persons under consideration as nominees or prospective nominees shall be held in confidence by the Commission and shall be disclosed only at the direction of the Governor and only to the Governor or his designee. The Judicial Nominating

1. The Judicial Nominating Commission was first established by Governor Pierre S. du Pont, IV, pursuant to Executive Order No. 4, approved on February 24, 1977. His successor, Governor Michael N. Castle, continued the Commission pursuant to Executive Order No. 1, approved on February 21, 1985. Governor Castle preceded Governor Carper in office.

Commission is established by the Governor solely to assist him in the exercise of his discretion regarding judicial appointments, and the creation of the Commission and its adoption of rules, procedures and standards in no way waives any privilege attaching to the source and substance of any advice or information provided to the Governor in this regard, nor waives any privilege attaching to the records, investigations and deliberations of the Commission regarding the performance of its duties under this Executive Order.

Executive Order No. 10 amends Executive Order No. 3 to the extent that the Commission is authorized to disclose its records and deliberations to the Delaware State Bar Association's Committee on Judicial Appointments for its views regarding the candidates for judicial office, provided such disclosure is held in confidence by that Committee. Executive Order No. 10 paragraph 1.

The parties do not dispute the basic facts that Plaintiff made a request to see the records of the Commission and this request was denied. At issue are only the legal questions whether the Commission is a public body subject to the provisions of the Act, whether its records are public records under the Act and whether the Commission's refusal to disclose the records entitles Plaintiff to relief.

## II. Legal Standard for Summary Judgment

■ A motion for summary judgment requires the Court to examine the record to determine whether there are any genuine issues of material fact or whether the evidence is so one-sided that one party should prevail as a matter of law. *Burkhart v. Davies*, Del.Supr., 602 A.2d 56, 59 (1991), *cert. denied*, 504 U.S. 912, 112 S.Ct. 1946, 118 L.Ed.2d 551 (1992). The court will consider the pleadings, any depositions, answers to interrogatories, admissions on file, and affidavits in making its determination. Super.Ct.Civ.R. 56(c). If, after viewing the record in the light most favorable to the nonmoving party, the Court finds no genuine issue of material fact, summary judgment is appropriate. *Hammond v. Colt Industries Operating Corp.*, Del.Super., 565 A.2d 558,

560 (1989). However, summary judgment may not be granted when the record indicates a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Wilson v. Triangle Oil Co.*, Del.Super., 566 A.2d 1016, 1018 (1989).

## III. Discussion

■ The Freedom of Information Act, Delaware's "sunshine law," provides for open meetings and open records of governmental or public bodies. *See* 29 *Del.C.* §§ 10003, 10004. The policy behind this law is to ensure government accountability, inform the electorate and acknowledge that public entities, as instruments of government, should not have the power to decide what is good for the public to know. *Delaware Solid Waste Authority v. News–Journal Co.*, Del.Supr., 480 A.2d 628, 631 (1984). That policy finds expression in 29 *Del.C.* § 10001, which states:

It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and to further the accountability of government to the citizens of this State, this chapter is adopted, and shall be construed.

Substantively, the Act establishes a public right to inspect all public records. *See* 29 *Del.C.* § 10003(a). It authorizes all "public bodies," as defined by § 10002(a), to establish rules and regulations regarding access to public records. § 10003(b). Section 10002(d), in defining the term "public record," lists fourteen exceptions to the public's right of access.

■ As a threshold matter, the Commission denies in its answer to the complaint that it is a public body subject to the provisions of the Act. In its brief supporting its motion for summary judgment, however, the Commission argues that a common law and

constitutional executive privilege exempts its records from disclosure. The Commission also relies on the constitutional argument that application of the Act to the Commission would violate the separation of powers doctrine.

Under the Act, a public body is broadly defined.

> "Public body" means, unless specifically excluded, any regulatory, administrative, advisory, executive, appointive or legislative body of the State ... including ... any board, bureau, commission, department, agency, committee, ad hoc committee, special committee, temporary committee, advisory board and committee, subcommittee, legislative committee, association, group, panel, council or any other entity or body established by an act of the General Assembly of the State ... or appointed by any body or public official of the State ..., which: (1) Is supported in whole or in part by any public funds; or (2) expends or disburses any public funds ...; or (3) is impliedly or specifically charged by any other public official, body, or agency to advise or to make reports, investigations or recommendations. Public body shall not include the General Assembly of the State, nor any caucus thereof, or committee, subcommittee, ad hoc committee, special committee or temporary committee.

29 *Del.C.* § 10002(a). An examination of Executive Order No. 3 reveals that the Commission meets the broad criteria for the term "public body." It is an executive commission, appointed by a public official, which is specifically charged by the Governor to make recommendations. In the absence of any evidence of a contrary legislative intent, the Court concludes that the Judicial Nominating Commission is a "public body" within the definition of the Act. As a public body, the Commission's records are available for inspection by the public unless they fall within any of the fourteen exceptions to the term "public record," *see* § 10002(d), or unless the application of the Act would impermissibly encroach upon the powers under the Delaware Constitution of a co-equal branch of the government, in this case the Governor.

## A. The Commission's Burden of Proof

■ In any action brought under the Act, the burden of proof is on the custodian of records to justify the denial of access to records. 29 *Del.C.* § 10005(c). This allocation of the burden of proof underscores the basic public policy that disclosure, not secrecy, is the purpose behind the Act, *see* 37A Am.Jur.2d *Freedom of Information Acts* § 534 (1994), and also recognizes that the plaintiff asserting a freedom of information claim has a disadvantage because only the public body holding the information can speak confidently regarding the nature of the material and the circumstances of its preparation and use which might support an exemption defense. *Booth Newspapers, Inc. v. Regents of the University of Michigan*, 93 Mich.App. 100, 286 N.W.2d 55, 60 (1979). Accordingly, a public body that moves for summary judgment on its affirmative defense of exemption is required to offer affidavits or other material sufficient to show that it is factually impossible for the plaintiff to defeat that defense. *Id.* 286 N.W.2d at 61; 37A Am.Jur.2d *Freedom of Information Acts* § 511 (1994); *see also Chemical Industry Council of Delaware, Inc. v. State Coastal Zone Industrial Control Board*, Del.Ch., C.A. No. 1216–K, 1994 WL 274295, Jacobs, V.C. (May 19, 1994) (Board failed to carry its burden of proof to justify its use of executive sessions on cross-motions for summary judgment).

■ The record in this case consists only of the pleadings and copies of two Executive Orders. There is no affidavit before the Court showing that the documents withheld by the Commission consist of: "any personnel, medical or pupil file," 29 *Del.C.* § 10002(d)(1); "any record of discussions held in executive session," § 10002(d)(10); "discussion of an individual citizen's qualifications to hold a job or pursue training," § 10004(b)(1); or "personnel matters," § 10004(b)(9), as contended by the Commission in its answer. Because the Commission has not presented evidence to justify its claim to exemptions based on the above-cited provisions, it has not demonstrated that sum-

mary judgment should be granted on these grounds.

The Commission's final claim of statutory exemption is based upon § 10002(d)(6) which exempts "records specifically exempted from public disclosure by statute or common law." The pleadings and the record do show that there is no issue of material fact involving the nature and purpose of the Commission. It exists to advise the Governor on qualified candidates for judicial office in this State. The record is sufficient for the Court to determine whether the Commission has shown that its records are protected from disclosure by § 10002(d)(6).

## B. Executive Privilege

■ The phrase "executive privilege" has not been used with precision or uniformity by courts. *Killington, Ltd. v. Lash,* 153 Vt. 628, 572 A.2d 1368, 1371 n. 3 (1990). It can apply to communications to and from the President, *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), or a governor, *Hamilton v. Verdow,* 287 Md. 544, 414 A.2d 914 (1980). This privilege is sometimes also referred to as the "state secret privilege," the "official information privilege," *Hamilton,* 414 A.2d at 920 n. 3, or the "deliberative process privilege." *Times Mirror Co. v. Superior Court,* 53 Cal.3d 1325, 283 Cal.Rptr. 893, 901 n. 10, 813 P.2d 240, 248 n. 10 (1991).

■ The privilege against disclosure of the decision-making process is a tripartite privilege because it exists for the legislative and judicial branches of government as well as for the executive. *Soucie v. David,* 448 F.2d 1067, 1080 (D.C.Cir.1971) (Wilkey, J. concurring). It arises from two sources, one common law and the other constitutional. *Id.* As part of the common law of evidence, the privilege arises from:

the common sense-common law principle that not all public business can be transacted completely in the open, that public officials are entitled to the private advice of their subordinates and to confer among themselves freely and frankly, without fear of disclosure, otherwise the advice received and the exchange of views may not be as

frank and honest as the public good requires.

*Id.* at 1080–81 (Wilkey, J. concurring). With respect to the Executive Branch of the Federal Government, this common law privilege is codified in the fifth exemption to the Federal Freedom of Information Act which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C.A. § 552(b)(5) (1977); *Soucie v. David,* 448 F.2d at 1081 (Wilkey, J., concurring).

The constitutional basis for the executive privilege stems from the doctrine of separation of powers. "Whatever the nature of the privilege of confidentiality of Presidential communications in the exercise of Art. II powers, the privilege can be said to derive from the supremacy of each branch within its own assigned area of constitutional duties." *United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974).

The expectation of a President to the confidentiality of his conversations and correspondence, like the claim of confidentiality of judicial deliberations, for example, has all the values to which we accord deference for the privacy of all citizens, and added to those values, is the necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decision making. A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately. These are the considerations justifying a presumptive privilege for Presidential communications. The privilege is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution.

*Id.* at 708, 94 S.Ct. at 3107. The privilege is constitutionally based to the extent the interest in confidentiality relates to the effective discharge of a President's powers. *Id.* at 711, 94 S.Ct. at 3109.

■ While it is true that § 10002(d)(6) addresses statutory exemptions, it would be incongruous to hold that the General Assem-

bly intended a statutory exemption but not an exemption based upon the constitution to be sufficient to preclude disclosure. I find that the word "statute" within the meaning of this exemption under the Act is sufficiently inclusive to embrace provisions of the State Constitution. Compare *American Federation of Labor v. Watson,* 327 U.S. 582, 592, 66 S.Ct. 761, 766, 90 L.Ed. 873 (1946) (holding that the term "statute" as used in § 266 of the Judicial Code requiring a three-judge court to enjoin the enforcement of any "statute" of a state includes a state constitutional provision); *Sincock v. Duffy,* 215 F.Supp. 169, 171 (D.Del.1963) (three-judge court restraining enforcement of provision of Delaware Constitution pursuant to statute requiring such review of any state "statute"); *Board of Education of Hall County v. Shirley,* 226 Ga. 770, 177 S.E.2d 711, 712 (1970) (holding the word "statute" in the Declaratory Judgment Act of necessity includes a provision of the [state] Constitution).

 Neither the common law nor constitutional underpinnings for such confidentiality, however, sustain an absolute, unqualified Presidential privilege under all circumstances. *Id.* 418 U.S. at 706, 94 S.Ct. at 3106. Absent a claim of need to protect military, diplomatic or sensitive national security secrets, a generalized claim of public interest in the confidentiality creates a presumptive privilege which must be balanced against competing interests. *Id.* 418 U.S. at 706–707, 94 S.Ct. at 3106–3107.

 A governor bears the same relation to a state as does the President to the United States and generally is entitled to the same executive privileges and exemptions in the discharge of his duties as is the President. *Hamilton v. Verdow,* 414 A.2d at 921. State courts that have dealt with the issue have been nearly unanimous in holding that a governor, in the discharge of official duties, is entitled to an executive privilege to protect the governor's deliberative and mental processes. *Times Mirror Co. v. Superior Court,* 283 Cal.Rptr. at 902 n. 10, 813 P.2d at 249 n. 10. In particular, the courts have applied this privilege to protect materials prepared by or for the governor. *See, e.g., Id.* at 905, 813 P.2d at 252 (using terms "executive privilege" and "deliberative process privilege" interchangeably in opinion, Court holds that privilege protects Governor's appointment calendars and schedules); *Killington, Ltd. v. Lash,* 572 A.2d at 1371 n. 3 (Court recognizes "executive privilege" for communications to or from or reports intended for the governor); *Doe v. Alaska Superior Court,* Alaska Supr., 721 P.2d 617 (1986) (Court applies "executive privilege" doctrine to protect internal communications in Governor's file concerning candidate for State Medical Board); *Hamilton v. Verdow,* 414 A.2d at 920 (Court recognizes doctrine of "executive privilege" in case involving confidential report prepared for and at the order of the Governor of Maryland); *Nero v. Hyland,* 76 N.J. 213, 386 A.2d 846, 853 (1978) (qualified "executive privilege" accorded to communications pertaining to governor's executive function, in this case, a character investigation of prospective gubernatorial appointee); *Lambert v. Barsky,* N.Y.Supr., 91 Misc.2d 443, 398 N.Y.S.2d 84 (1977) ("public interest" or "executive" privilege protects confidential questionnaire submitted to Judicial Nominating Committee created by executive order of the Governor).

These state courts have recognized that a vital public interest is involved in the effective discharge of a governor's constitutional duties and have accorded their respective governors a qualified privilege for protecting confidential communications relating to the executive function[2]. *See Nero v. Hyland,*

---

2. In contrast to the above-cited cases recognizing an executive privilege protecting communications to and from a governor, the Delaware Chancery Court and the Supreme Judicial Court of Massachusetts have declined to recognize an executive or deliberative process privilege claimed by two respective state agencies.

Vice Chancellor Jacobs recently rejected a claim of "deliberative process privilege" asserted by the State Coastal Zone Industrial Control Board. *Chemical Industry Council of Delaware, Inc. v. State Coastal Zone Industrial Control Board,* Del. Ch., C.A. No. 1216–K, 1994 WL 274295, Jacobs, V.C. (May 19, 1994). In an action brought pursuant to the Freedom of Information Act, plaintiffs challenged the validity of regulations recently adopted by the Board. Plaintiffs alleged that the Board had violated the Act by excluding the public from the rule-making process by which the regulations were adopted.

386 A.2d at 853. The same public interest is at issue in this case. As head of the Executive Branch of State Government, a Delaware Governor is responsible for appointing judges to the several State court systems[3]. It would be unreasonable to expect a governor to have extensive personal knowledge of all prospective appointees. Yet it is of overwhelming importance to the State to have a judiciary composed of judges of "high integrity, independence and excellent legal abilities." *See* Executive Order No. 3. The establishment of a commission to assist the Governor in searching for qualified persons is a reasonable and efficient method of ensuring that the best candidates are selected for judicial office. The effectiveness of that search, however, would be compromised if the source and substance of the advice and information provided to the governor by the commission were not protected. It is unlikely that persons with knowledge of the qualifi-

*Id.* at 1. In defending itself, the Board sought to justify its use of executive sessions to discuss drafts of proposed regulations by claiming the drafts contained "deliberative comments ... exempted from disclosure ... by common law[.]" *Id.* at 22. The Chancery Court found no support in Delaware for such a privilege. *Id.*

In a similar action challenging regulations promulgated by the Massachusetts Department of Social Services, plaintiffs sought to compel production of internal memoranda and drafts of proposed regulations that the agency claimed were protected from disclosure by a "governmental privilege." *Babets v. Secretary of the Executive Office of Human Services*, 403 Mass. 230, 526 N.E.2d 1261, 1262 (1988). The Court declined to recognize an executive privilege under the doctrine of separation of powers or to create such a privilege as a matter of common law. *Id.* 526 N.E.2d at 1263, 1266.

3. Article III, § 9 of the Delaware Constitution of 1897 empowers the Governor to appoint "by and with the consent of a majority of all members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint." Article IV, § 3 grants to the Governor the power to appoint the Justices of the Supreme Court, the Chancellor and Vice–Chancellors, and the President Judge and Associate Judges of the Superior Court. The Governor is also authorized to appoint the Judges of the Family Court, 10 *Del. C.* § 906(a), the Judges of the Court of Common Pleas, 10 *Del. C.* § 1303(a), the Judges of the Municipal Court for the City of Wilmington, 10 *Del. C.* § 1702(a), and the Chief Magistrate of the Justice of the Peace Court, 10 *Del. C.* § 9202(c).

4. Delaware Uniform Rule of Evidence 508 provides:

cations of candidates would be as frank in their comments if they knew their statements would not be confidential.

Although there is no previous Delaware case in which a governor has claimed an executive privilege for such communications, two Delaware courts have recognized the existence of a common law "governmental privilege" to protect certain communications between witnesses and prosecutors. *See Beckett v. Trice*, Del.Super., C.A. No. 92C–08–029, 1994 WL 319171, Lee, J. (June 6, 1994); *State v. Brown*, Del.Oyer & Term., 36 A. 458 (1896); *see also* D.R.E. 508[4]. These communications "are regarded as secrets of state, or matters the disclosure of which would be prejudicial to the public interests. They are therefore protected, and all evidence thereof excluded, from motives of public policy." *State v. Brown* at 463–64.

**RULE 508. SECRETS OF STATE AND OTHER OFFICIAL INFORMATION; GOVERNMENTAL PRIVILEGES.**

**(a) Claim of Privilege.** If the law of the United States creates a governmental privilege that the courts of this State must recognize under the Constitution of the United States, the privilege may be claimed as provided by the law of the United States.

**(b) Recognition of Privilege.** A governmental privilege existing at common law, or created by the Constitution, statute or court rule of this State, shall be recognized.

**(c) Effect of Sustaining Claim.** If a claim of governmental privilege is sustained and it appears that a party is thereby deprived of material evidence, the court shall make any further orders the interests of justice require, including striking the testimony of a witness, declaring a mistrial, finding upon an issue as to which the evidence is relevant or dismissing the action.

The Comments to Rules 501 and 508 state that Article V of the Delaware Uniform Rules of Evidence dealing with privileges was modeled on the Uniform Rules of Evidence (1974) ("U.R.E.") as promulgated by the National Conference of Commissioners on Uniform State Laws. Rule 508(b), however, is new. The Code of Evidence Committee, appointed by Chief Justice Daniel L. Herrmann to study the Federal Rules of Evidence and to make recommendations to the Delaware Supreme Court, believed that U.R.E. 508(b), which would abolish all governmental privileges except as created by the Constitution or statutes, was undesirable.

It is logical that a common law which recognizes a governmental privilege extending to the Attorney General under certain circumstances would also recognize a privilege extending to the Chief Executive of the State in the exercise of his appointive duties. This follows because disclosure of records compiled at the behest of the Governor to aid him in the exercise of his constitutional appointive power would undermine the "sensitive decisional and consultive responsibilities of the Governor which can only be discharged freely and effectively under a mantle of privacy and security." *See Nero v. Hyland*, 386 A.2d at 853.

The fact that no previous Delaware decision has dealt squarely with the claim of executive privilege asserted here does not support a conclusion that such a privilege does not exist. Both the constitutional and common law roots of the privilege strongly require its recognition in this context[5]. This Court, therefore, recognizes as part of the constitutional and common law of the State the doctrine of executive privilege with respect to the source and substance of communications to and from the Governor in the exercise of his appointive power.

### C. The Balancing Process

■■■ The executive privilege is not absolute. Unlike most evidentiary privileges, it is for the benefit of the public, not the executive who asserts it. *Killington, Ltd. v. Lash*, 572 A.2d at 1374. The privilege serves the purpose of protecting the effectiveness of the overall governmental system. Thus, in a criminal case, where "the very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts" the legitimate need for disclosure of relevant evidence may outweigh a generalized claim of public interest in the confidentiality of Presidential communications. *See United States v. Nixon*, 418 U.S. at 709, 94 S.Ct. at 3108. Conversely, in a civil case, "when the danger of possible unjust censure of a candidate for appointment ... is balanced against the need for effective pre-appointment screening of prospective appoin-

tees, the latter interest is far more compelling." *Nero v. Hyland*, 386 A.2d at 853. Whether a claim of executive privilege is sustained, therefore, depends upon whether the need for protecting the confidentiality of executive communications outweighs the litigant's need for disclosure.

■■■ Once a prima facie case has been made for the assertion of an executive privilege, the burden shifts to the requester, in this case Plaintiff Guy, to demonstrate the reasons why the need for disclosure outweighs the interest in confidentiality. *Killington, Ltd. v. Lash*, 572 A.2d at 1375. Without such a showing, the materials covered by the presumptive privilege are also protected from the limited intrusion represented by even an *in camera* inspection by a court. *Id.; see also Hamilton v. Verdow*, 414 A.2d at 925 (citing *Senate Select Committee on Pres. Cam. Act. v. Nixon*, 498 F.2d 725, 730 (D.C.Cir.1974)). This burden does not shift when records are being sought pursuant to a state freedom of information statute which places the burden of establishing any exemption to disclosure on the public agency. *See Killington, Ltd. v. Lash*, 572 A.2d at 1375 ("The language of § 317(b)(4) brings common-law privileges with their established burdens into the law. Once incorporated, the privileges are to be applied as a whole and not piecemeal.")

In this case, the plaintiff has failed to provide the Court with any reasons to support his request for disclosure. Plaintiff has demonstrated no need for disclosure of the Commission's records and thus has failed to carry his burden of proof to overcome the presumption of executive privilege. The Court holds, therefore, that the confidential records of the Commission, in issue here are protected by the constitutional and common law doctrine of executive privilege, are not "public records" as defined by 29 *Del. C.* § 10002(d), and, therefore, are exempt from disclosure by the terms of the Act. Having so decided, it is unnecessary for this Court to address the constitutional question whether

---

5. Like the Constitution of the United States, the Delaware Constitution contains no specific provision mandating the separation of powers, but the doctrine is fundamental to our constitutional law. *Opinion of the Justices*, Del.Supr., 380 A.2d 109, 113 (1977).

**786**

the separation of powers doctrine *per se* precludes the application of the Act to the Commission.

## IV. Motion to Amend Complaint

■ Facing the Commission's motion for summary judgment, Plaintiff seeks to amend his complaint by adding allegations of improper disclosure by members of the Commission and denial of equal protection of the law. As to the claim of disclosure, Plaintiff seeks to amend the complaint to allege that information held by the Commission has been revealed to persons outside the scope of the Executive Order and, in particular, to the media. Such disclosure by private individuals, however, is irrelevant to the claim of executive privilege. The privilege belongs to the Chief Executive and may be waived only by an incumbent of that office. *See Nixon v. Sampson*, 389 F.Supp. 107, 151 (D.D.C.1975).

■ Plaintiff also seeks to allege a violation of the Equal Protection Clauses of the United States Constitution and the Delaware Constitution. He seeks to allege race-based preferential treatment in that the Commission provides the Delaware State Bar Association Committee on Judicial Appointments with an opportunity to comment on candidates before sending names of qualified candidates to the Governor, but does not provide a similar opportunity to the Barristers, an organization of predominantly minority attorneys. The process for disclosure to the Delaware State Bar Association is within Executive Order No. 10. Even so, the Court finds that these proposed allegations are irrelevant to the issue of exemption of the records and the application of the Freedom of Information Act to the Commission. Because the proposed additional allegations would not state a claim for relief under the Act, amending the complaint would be futile. Under such circumstances, Plaintiff's motion to amend must be denied. *See DeNardo v. Rodriguez*, Del.Super., C.A. No. 92C–02–026, 1993 WL 81319, Ridgely, P.J. (February 12, 1993) at 8 (Where a complaint as amended would not withstand a motion to dismiss, the motion to amend should be denied as futile); *Hess v. Carmine*, Del.Super., 396 A.2d 173, 177 (1978) (Leave to amend should be freely

given unless there is evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, prejudice, futility, or the like).

## V. Conclusion

The records of the Judicial Nominating Commission are protected against disclosure under the Delaware Freedom of Information Act pursuant to the statutory exemption of 29 *Del. C.* § 10002(d)(6), which exempts records privileged by statute and common law. Plaintiff's proposed amendment to the complaint would not alter that result.

For the foregoing reasons, Plaintiff's Motion to Amend the Complaint is denied and Defendant's Motion for Summary Judgment is granted.

## ORDER

This 7th day of April, 1995, the Court having issued its opinion this date, and for the reasons assigned therein,

**IT IS ORDERED** that:

1. Plaintiff's Motion to Amend the Complaint is denied.

2. Defendant's Motion for Summary Judgment is granted.