Donald C. MELL, III, Plaintiff,

v.

NEW CASTLE COUNTY, Defendant.

C.A. No. 03M–06–030–JRS.

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 27, 2003.
Decided: Sept. 9, 2003.

Richard H. Cross, Jr., Law Office of Richard H. Cross, Jr., Wilmington, Delaware, for the Plaintiff.

Timothy P. Mullaney, Sr., New Castle County Law Department, New Castle, Delaware, for Defendant.

## OPINION

SLIGHTS, J.

### I.

With the filing of a complaint for writ of mandamus to compel responses to requests directed to New Castle County ("the County") under Delaware's Freedom of Information Act ("FOIA"),[1] this Court has been drawn into the fray of a controversy which is the subject of litigation pending in the Court of Chancery. The plaintiff in this case, Donald C. Mell, III ("Mell"), joined other plaintiffs to file a complaint in Chancery for injunctive relief against the New Castle County Council, its individual members, the County Executive and a member of his staff ("the Chancery Action"). The complaint sought an order enjoining the County from authorizing the payment of certain legal fees incurred by individual employees of the County in connection with a federal investigation of alleged improprieties which occurred during the course of the campaign leading up to the primary elections in September, 2002 (the "Federal investigation"). Specifically, it was alleged that the County Executive improperly authorized or directed County employees to perform campaign work on behalf of certain candidates for the office of County Council.

During the course of discovery in the Chancery Action, plaintiffs sought the production of records relating to the purport-

1. DEL CODE ANN., tit. 29, § 10001–05. (1997). The relevant sections of FOIA shall be cited hereinafter as "Section ___."

ed transfer of $230,000 from the County's Executive Contingency Fund to the County's Legal Department for the payment of "legal fees" (the "$230,000 transfer"), including records relating to the identity of any such fees that were incurred, on whose behalf they were paid and to whom. As best as the Court can discern from the record, the defendants resisted the discovery on the grounds that the transfer of funds was not related to the Federal investigation and, moreover, the records which reflected the transfer of funds had already been produced. The defendants also represented to the Chancellor that no decision had been made to use County funds to pay individual legal fees in connection with the Federal investigation, and that when such a decision was made, the County would notify the court and plaintiffs' counsel immediately so that appropriate applications for relief could be pursued.

By letter dated June 5, 2003, the Chancellor ordered a stay of discovery in the Chancery litigation based upon the defendants' representations that the County had not indemnified and, at present, had no intention of indemnifying County employees for legal expenses incurred in the Federal investigation. With respect to discovery related to the $230,000 transfer, the Chancellor found that the County was not required to provide further discovery on that issue unless and until plaintiffs provided the document(s) which gave rise to the concern that the funds were utilized to pay individual legal fees on behalf of County employees.[2]

On March 23, 2003, and again on March 31, 2003, Mell's attorney, Richard H. Cross, Jr. ("Cross"), submitted to the County two requests under FOIA seeking documents relating to the $230,000 transfer, and the specifics regarding legal fees that may have been paid from those funds. The County responded again by producing the documents which reflected the transfer; it did not, however, produce any documents relating to specific disbursements of funds for legal fees. Cross then filed a complaint with the Attorney General seeking a declaration that the County had violated FOIA by providing an untimely and incomplete response.[3] By letter dated June 2, 2003, the Attorney General opined that the County's response to Cross' FOIA request was inadequate because it failed to provide "documents that reflect when the monies (referring to the $230,000 transfer) were spent, for what purpose, and who received payments in what amount. . . ." Referencing the Attorney General's opinion, and apparently as a further response to the pending FOIA requests, the County Attorney wrote to Cross on June 11, 2003, to advise him that "the County has already provided all documents in its possession relative to this request."

Mell filed his first complaint for writ of mandamus against the County on June 13, 2003. In that complaint, he sought a writ from this Court compelling the County to provide complete responses to Cross' March 23, 2003 and March 31, 2003 FOIA requests. The County moved to dismiss the complaint on July 17, 2003. Mell filed an amended complaint on July 21, 2003 in which, in addition to the relief sought in the first complaint, he sought a writ compelling the County to respond to additional FOIA requests which had been directed to the County on June 4, 2003, June 27, 2003

---

2. *See Mell v. New Castle County*, C.A. No. 20003–NC, Chandler, C. (Del. Ch. June 5, 2003)(Letter Op.).

3. *See* Section § 10005(e)("Any citizen may petition the Attorney General to determine whether a violation of this chapter has occurred or is about to occur.").

and June 30, 2003.[4] On July 29, 2003, in response to the County's motion to dismiss—where the County questioned Cross' standing to make a FOIA request—Mell (presumably with Cross' assistance) submitted his own FOIA requests to the County in which he sought the same information solicited by Cross in his earlier requests. Specifically, Mell sought information relating to the $230,000 transfer and the County's payment of invoices from attorneys known to be representing County employees in the Federal investigation. To the Court's knowledge, the County has not responded to Mell's FOIA requests.

## II.

The County has raised three arguments in support of its motion to dismiss. First, as mentioned, the County has questioned Cross' standing to make a FOIA request. Second, the County contends that the records which are the subjects of the various FOIA requests at issue are not "public records" as contemplated by the FOIA statute because they are the subject of pending litigation, i.e., the Chancery litigation. And, finally, the County urges the Court to decline to take the extraordinary step of issuing a writ of mandamus because the plaintiff may seek relief in the Chancery litigation, thereby affording him an available remedy short of mandamus relief. The Court will address each argument *seriatum.*

## III.

Before the Court addresses the substantive arguments, it is appropriate first to address the standard of review. The County has moved to dismiss, presumably under Delaware Superior Court Civil Rule 12. Yet, in advancing their respective arguments, both parties have relied upon matters outside of the pleadings. Accordingly, the Court must determine whether the motion to dismiss may be adjudicated as styled or whether it must be adjudicated under the summary judgment standard set forth in Rule 56.[5]

■ Delaware courts follow the federal practice when determining whether the presentation of matters outside of the pleadings will convert a motion to dismiss to a motion for summary judgment.[6] The critical questions in the analysis are whether the extraneous matters are integral to and have been incorporated within the complaint and whether they have been offered to the court to establish the truth of their contents.[7] If the extraneous matters have been offered to establish their truth, the court must convert the motion to dismiss to a motion for summary judgment.[8]

■ Here, as stated, both parties have relied on matters beyond the pleadings, including the FOIA requests, the County's various responses, the Attorney General's

4. The Court already has determined that Mell properly amended his complaint without leave of Court, even though the amendment came after the County's first responsive pleading, because the County served the pleading (its motion to dismiss) upon plaintiff's counsel at the wrong address. *See* Del.Super. Ct. Civ. R. 15(a).

5. Del.Super. Ct. Civ. R. 56. *See also* Del.Super. Ct. Civ. R. 12(b)(6)("If, on a motion ... to dismiss for failure of the pleadings to state a claim upon which relief can be granted,

matters outside the pleadings are presented to ... the court, the motion shall be treated as one for summary judgment.").

6. *See, e.g., In Re Sante Fe Pac. Corp. S'holder Litig.,* 669 A.2d 59, 69 (Del.1995).

7. *Id.*

8. *See Great American Assur. Co. v. Fisher Controls Int'l., Inc.,* 2003 WL 21901094, at *3, 2003 Del. LEXIS 275, at *10–11 (Del.Super.).

opinion, pleadings and a decision of the court from the Chancery litigation, e-mail correspondence between the attorneys involved in the Chancery litigation, and the County's document production in response to the FOIA request. Some of the information was appended to the complaint; some was presented for the first time in the motion papers and responses. While the FOIA requests themselves arguably have not been offered for the truth of their contents, both parties have relied upon the content of the County's responses to the requests and the e-mail correspondence between counsel, particularly with respect to the arguments relating to the pending litigation exception to FOIA and the extent to which relief is available to plaintiff in the Chancery litigation. Accordingly, the Court must consider the motion in the context of Rule 56's standard of review.[9]

When considering a motion for summary judgment, the Court's function is to examine the record to determine whether genuine issues of fact exist.[10] If, after viewing the record in a light most favorable to the non-moving party, the Court finds that there are no genuine issues of material fact, and the party is entitled to judgment as a matter of law, then summary judg-ment will be granted.[11] Summary judgment will not be granted, however, if the record indicates that a material fact is in dispute, or if judgment as a matter of law is not appropriate.[12] Summary judgment also is not appropriate when the Court determines that it is "desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[13]

■ In the context of a complaint for writ of mandamus, the Court's summary judgment analysis must also take into account the unique standards applicable to mandamus. The writ of mandamus "is a remedial writ, the appropriate functions of which are the enforcement of the performance of duties, imposed by law, by officers and others who neglect or refuse to perform their duty."[14] It is an extraordinary writ which can only be issued when "the plaintiff is able to establish a clear right to the performance of a non-discretionary duty,"[15] and that no other "specific or adequate remedy at law" is available.[16]

## IV.

When considering the propriety of a request for information under FOIA, the

9. *Id.*

10. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* 312 A.2d 322, 325 (Del.Super.Ct.1973).

11. *Id.*

12. *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).

13. *Guy v. Judicial Nominating Comm'n,* 659 A.2d 777, 780 (Del.Super.Ct.1995).

14. *Logan v. Dep't of Health and Social Services,* 1987 WL 8877, at *2, 1987 Del. LEXIS 1090, at *5–6 (Del.Super.) (citations omitted).

15. *Remedio v. City of Newark,* 337 A.2d 317, 318 (Del.1975).

16. *State ex. rel. Walker v. Harrington,* 27 A.2d 67, 75 (Del.1942). At oral argument, some question was raised *vel non* the unavailability of other adequate remedies at law was a predicate to mandamus relief. A review of the case law reveals that it is well-settled that the writ of mandamus will not issue if other remedies at law are available. *See, e.g., Wilson v. Williams,* 2002 WL 31474539, at *1, 2002 Del. LEXIS 277, at *4 (Del.Super.) ("The extraordinary writ of mandamus is appropriate only where the plaintiff is able to establish a clear legal right to the performance of a non-discretionary duty and the unavailability of any other remedy."); *Burton v. Lichtenstadter,* 1999 WL 33116508, at *1, 1999 Del. LEXIS 655, at *3 (same); *Logan,* 1987 WL 8877, at *2–3, 1987 Del. LEXIS 1090, at *6 (Del.Super.)(same).

Court must remember the purpose of the legislation. Delaware's so-called "sunshine law" is intended "to ensure government accountability, inform the electorate and acknowledge that public entities, as instruments of government, should not have the power to decide what is good for the public to know." [17] This public policy is embedded in FOIA at Section 10001, which provides:

> It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and to further the accountability of government to the citizens of this State, this chapter is adopted, and shall be construed.

The mechanics of FOIA are relatively straightforward. FOIA establishes the right of public access to public records,[18] defines public records,[19] and lists exceptions to the public's right of access.[20] FOIA also clearly spells out the methods of enforcement when it is alleged that a public body has failed to respond to a proper request.[21] And, when a party challenges the sufficiency of the response, FOIA makes clear that the burden of proof rests upon the custodian of records to justify the denial of access to the records.[22]

The County, by its motion, has challenged two aspects of the pending FOIA requests. First, the County challenges whether Cross is a "citizen" entitled to make a FOIA request as contemplated by Section 10003(a). Second, the County contends that the records relating to the $230,000 transfer and any legal fees it may have paid on behalf of its employees [23] are not "public records" because they relate to matters "pertaining to ... pending litigation." [24] At first glance, these arguments

---

**17.** *Guy*, 659 A.2d at 780 (citation omitted).

**18.** *See* Section 10003(a)("All public records shall be open to inspection and copying by any citizen of the State ...").

**19.** *See* Section 10002(d)(" 'Public record' is information of any kind, owned, made, used, retained, received, produced, composed, drafted or otherwise compiled or collected, by any public body, relating in any way to public business, or in any way of public interest, or in any way related to public purposes, regardless of the physical form or characteristic by which such information is stored, recorded or reproduced.").

**20.** *Id.* (enumerating 14 exceptions to the definition of "public record," including the exception invoked by the County here: "the following records shall not be deemed public: any records pertaining to pending or potential litigation which are not records of any court."). *See* Section 10002(d)(9).

**21.** *See* Section 10005.

**22.** *See* Section 10005(c). When a party seeks to enforce compliance with FOIA by writ of mandamus, there are competing burdens at work. The party seeking the writ has the burden of establishing that no other legal remedies are available and that the writ is the only means by which FOIA can be enforced. *State ex. rel. Walker*, 27 A.2d at 75. Once this burden is carried, the burden shifts to the public body "to justify the denial of access to the records." Section 10005(c).

**23.** The County has not admitted to paying any legal fees on behalf of any of its employees in connection with the Federal investigation. Whether it did or did not pay such fees is not important to the disposition of the motion *sub judice*.

**24.** Section 10002(d)(9).

would appear to implicate a simple exercise of statutory construction. With respect to the second argument, however, the applicability of the "pending litigation" exception is blurred in the midst of an incomplete record. More information is needed to bring the issue into focus.

### A. Standing

■ The County's argument regarding whether Cross is a "citizen" under FOIA is tantamount to a challenge of Cross' standing to make the request. FOIA does not define "citizen." Nevertheless, this Court has determined that the term should be given its "functional" meaning and that a request under FOIA should come from the "citizen" who is seeking the information, as should the lawsuit which seeks to compel the public body to comply with FOIA.[25] In this case, Cross submitted the first round of FOIA requests in his own name even though he admittedly was acting on behalf of his client, Mell. The Court has already determined, and Cross has tacitly conceded, that he had no standing under FOIA since he did not make the requests "in his individual capacity as a 'citizen of the State.'"[26] But Mell cured the defect by submitting his own FOIA requests. The County acknowledged as much at oral argument. Thus, once the complaint has been amended to reflect that Mell's requests, and not Cross', give rise to the mandamus relief being sought, the standing issue will be moot.[27]

### B. The Pending Litigation Exception

■ The pending litigation exception to FOIA addresses a practical reality: when parties to pending litigation against a public body seek information from that public body relating to the litigation, they are doing so not to advance "the public's right to know," but rather to advance their own personal stake in the litigation.[28] Delaware courts will not allow litigants to use FOIA as a means to obtain discovery which is not available under the court's rules of procedure.[29] Moreover, when a party seeks to compel a response to a FOIA request by writ of mandamus, it is incumbent upon that party, as a predicate to relief, to demonstrate that other legal means, *e.g.*, discovery processes in pending litigation, are not available before the Court may consider issuing the extraordinary writ.[30]

At first glance, it would appear that the pending litigation exception fits squarely within these facts. Mell sought the same information in the Chancery litigation that he now seeks in his FOIA requests. His purpose for seeking the information in the Chancery litigation presumably was to prove his allegation that "[o]n information and belief, New Castle County has been

---

**25.** *See e.g. Office of the Public Defender v. Delaware State Police*, 2003 WL 1769758, at *2, 2003 Del. LEXIS 111, at *6–7 (Del.Super.); *Koyste v. Delaware State Police*, 2001 WL 1198950, at *2–3, 2001 Del. LEXIS 352, at *7–8 (Del.Super.).

**26.** *Id.*

**27.** The Court has indicated that it would look favorably upon a motion to amend the complaint to conform to the evidence, i.e., the new FOIA requests. *See* Del.Super. Ct. Civ R. 15(b).

**28.** *See Office of the Public Defender*, 2003 WL 1769758, at *3, 2003 Del. LEXIS 111, at *9 (Del.Super.).

**29.** *Koyste*, 2001 WL 1198950, at *3, 2001 Del. LEXIS 352, at *9 (Del.Super.)(court declined to allow party to use FOIA "as a circuitous route around the normal discovery channels.").

**30.** *State ex. rel. Walker*, 27 A.2d at 75.

paying attorneys fees to some, if not all of these personal counsel retained by the [county] employees [in connection with the Federal investigation]." [31]

By letter dated June 5, 2003, the Chancellor, in essence, determined that the Chancery litigation was premature because the County had yet to determine whether it would pay the legal fees incurred by its employees in connection with the Federal investigation. With respect to discovery, the Chancellor ruled that the County need not respond further to pending discovery requests because, according to the County's representations to the Court, "all requests have been met." [32] With respect to the requests relating to the $230,000 transfer, the Chancellor concluded that the County could not "be expected to properly respond" until "Mr. Cross [ ] produce[d] the document creating his concern." [33]

It would appear, then, that Mell is attempting to secure by FOIA that which he was unable to secure in the pending Chancery litigation. In this instance, however, appearances may be deceiving. For example, it is not clear to the Court why the County has not supplied information to Mell relating to the $230,000 transfer in the Chancery litigation now that it has received the "document creating [Cross'] concern." [34] Perhaps the explanation is that the Chancellor was expecting an unredacted version of "the document" to be produced. [35] Or, perhaps the explanation is that the Chancery litigation, for all intents and purposes, is no longer "pending" by virtue of the Chancellor's June 5 rulings. The Court has no way of knowing based on the record presented thus far.

Even more confounding is the e-mail correspondence between counsel in the Chancery litigation relating to discovery. Specifically, the County's privately retained counsel, John M. Seaman, Esquire, apparently has represented that the information plaintiffs sought in the Chancery litigation relating to the $230,000 transfer was "unrelated to the issues in [the] case." [36] Although not entirely clear, this representation would suggest that the $230,000 transfer was not related to legal fees incurred by County employees in connection with the Federal investigation. If this is the case, then the FOIA request relating to the expenditure of the $230,000 would not "pertain[ ] to pending ... litigation." [37] Rather, the request would reflect a citizen's desire to know how the County is spending its money, a proper purpose under FOIA.

■ Based on the foregoing, at least with respect to the FOIA request relating to the $230,000, the Court is unable to determine on this record whether Mell has sustained his burden of establishing that

31. *Mell v. New Castle County Council*, C.A. No. 20003–NC (Del.Ch.), Verified Complaint for Injunctive Relief, at ¶ 20.

32. *Mell v. New Castle County*, C.A. No. 20003–NC, Chandler, C. (Del. Ch. June 5, 2003)(Letter Op.).

33. *Id.* Apparently, "the document" to which the Chancellor refers is a copy of an anonymous e-mail received by Cross that attached e-mail correspondence from the County Auditor to the County's Chief Financial Officer requesting further information regarding the $230,000 transfer.

34. *Id.* Although it is not clear when the "document" was produced to the County, it has been referred to by both parties in these proceedings.

35. Mell has produced a copy of "the document" with the originating fax number redacted, apparently in an effort to protect the identity of the sender.

36. (D.I.7, Ex. A)

37. Section 10002(9).

mandamus relief is his only available remedy, or whether the County has sustained its burden of establishing that the documents pertain to pending litigation. It is "desirable to inquire more thoroughly into the facts" relating to this issue before determining whether summary judgment is appropriate.[38] Specifically, the Court would expect, at a minimum, a verified explanation from the County of Mr. Seaman's e-mails. Also, the Court would expect a more precise explanation of the Chancellor's June 5 rulings and a better understanding from the parties of the current status of the Chancery litigation.[39]

The FOIA requests seeking information relating to the County's payment of invoices from lawyers or law firms known to be representing County employees in the Federal investigation presents a clearer picture. With respect to these requests, the Chancellor has determined that such information must be produced in the Chancery litigation if and when the County determines to pay the invoices. The FOIA requests for these invoices relate directly to the matters in controversy in the Chancery litigation. And it is quite clear to the Court that Mell's purpose in making these FOIA requests is to advance his cause in the Chancery litigation; his request does not implicate the public's "right to know." [40] Accordingly, the County has properly invoked the "pending litigation" exception as to these documents and they need not be produced under FOIA.[41]

## V.

Based on the foregoing, the County's motion for summary judgment is **GRANTED in part** and **DENIED in part**. The requests relating to invoices and the payment of invoices from lawyers and law firms known to be representing County employees in connection with the Federal investigation pertain to matters at issue in pending litigation and therefore are not subject to FOIA. The motion for summary judgment is **GRANTED** with respect to these requests. On the other hand, assuming the complaint is amended to seek mandamus relief regarding the documents identified in Mell's FOIA request relating to the $230,000 transfer, the Court is unable to conclude on this record that the documents pertain to pending litigation or that mandamus relief is not appropriate. Accordingly, the motion for summary judgment is **DENIED** with respect to this request.

**IT IS SO ORDERED.**

---

38. *Guy,* 659 A.2d at 780.

39. Clearly, the Chancellor did not intend his June 5 letter for public consumption. It was written with the assumption that its consumers were well familiar with the factual and procedural history of the case. Unfortunately, while the parties have relied heavily upon the June 5 letter, they have not provided this Court with adequate context to allow a clear understanding of the import of the Chancellor's rulings.

40. *Koyste,* 2001 WL 1198950, at *3, 2001 Del. LEXIS 352, at *9 (Del.Super.).

41. Of course, this conclusion assumes that the Chancery litigation is still "pending," an assumption based upon the absence in the record of any indication to the contrary. If it is not still "pending," the Court would be hard-pressed to conceive of a basis upon which the County could invoke the "pending litigation" exception to FOIA.