Arba L. HENRY, Individually and Arba L. Henry, as Executor of the Estate of Paige M. Henry, deceased, Plaintiffs,

v.

NANTICOKE SURGICAL ASSOCIATES, P.A., a Delaware corp., and Roy T. Smoot, Jr., M.D., Defendants.

C.A. No. 05C–02–031 WLW.

Superior Court of Delaware, Kent County.

Submitted: Feb. 26, 2007.
Decided: May 24, 2007.

William D. Fletcher, Jr., Esquire of Schmittinger & Rodriguez, P.A., Dover, Delaware; attorneys for the Plaintiffs.

Dennis D. Ferri, Esquire of Morris James LLP, Wilmington, Delaware; attorneys for the Defendants.

## OPINION

WITHAM, R.J.

Defendant, Roy T. Smoot, Jr. ("Dr. Smoot"), filed a Motion for Summary Judgment against Plaintiffs, Arba L. Henry individually and as executor of the estate of Paige M. Henry, on the ground that there is no genuine issue as to any material fact as it pertains to Dr. Smoot and he is entitled to judgment as a matter of law. Plaintiffs argue that Dr. Smoot offered the Decedent negligent medical advice in a phone conversation during Paige Henry's

aftercare.[1] Defendant Smoot contends that the testimony explaining the advice he allegedly provided to Paige Henry ("Mr. Henry or the Decedent") is inadmissible hearsay, and he is therefore entitled to summary judgment in his favor.

Generally, the facts are as follows: Plaintiffs brought a survival action and a wrongful death case against Defendants [2] due to the death of Paige Henry. Mr. Henry died soon after he was released from Nanticoke Memorial Hospital following gastric bypass surgery performed by Dr. Smoot. Plaintiffs allege that the Defendants failed to respond properly to a medical complaint made by Mr. Henry to the on-call physician for Nanticoke Surgical on March 8, 2003, in which the Deceased complained of "major gas problems." [3] After receiving the message, no one from Nanticoke Surgical allegedly instructed Mr. Henry to report to either the hospital emergency room department or to his physician's office. Mr. Henry died three days after discharge from the hospital. Plaintiffs contend that the Defendants provided negligent aftercare to Mr Henry, resulting in his death.

Defendant Smoot argues that the evidence shows that it was not Dr. Smoot, but rather his colleague, Dr. Miller, who would have been on-call when Mr. Henry made his alleged phone call complaining of after-surgery pain. The record reflects that Dr. Miller was the on-call Doctor at the time of the alleged phone call, and the record tends to further show that any messages and/or phone calls to and/or from Mr. Henry went to Dr. Miller's assigned number.[4] It appears that the only thing that links Dr. Smoot, specifically, to the alleged negligent aftercare of Mr. Henry is the testimony of Katie Merrick, a friend of Mr. Henry. Ms. Merrick testified that Mr. Henry told her that he had spoken to Dr. Smoot via telephone, after the surgery, about "bad gas pains" and that Dr. Smoot had advised the Decedent "that he do some walking and/or receive an enema." [5] Plaintiffs alternatively argue that Ms. Merrick's statement "referencing Dr. Smoot could have meant the doctor himself or could have been shorthand for one of the other medical providers at Nanticoke Surgical Associates who treated him." [6]

### Standard of Review

Summary Judgment should be rendered if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[7] The facts must be viewed in the light most favorable to the non-

---

1. Plaintiffs filed a single Response Motion that addresses both Defendant Smoot and Defendant Nanticoke Surgical Associates, P.A.'s Motion for Summary Judgment. The Defendants and Plaintiffs also filed supplemental memorandum on the issue, at the Court's request, following additional discovery.

2. There were four Defendants in this case: Dr. Smoot, Nanticoke Surgical Associates, P.A., Nanticoke Memorial Hospital, Inc. and Nanticoke Health Services, Inc. Defendants Nanticoke Memorial Hospital, Inc. and Nanticoke Health Services, Inc. are no longer parties in this action.

3. It is important to note that Plaintiffs' allegations are based on the aftercare provided to Mr. Henry and not on the initial surgery.

4. Dr. Miller confirmed that post-operative care was provided by himself and Dr. Rodriguez, at his deposition in December of 2005.

5. Dr. Smoot does not recall the alleged conversation.

6. Plaintiffs' Supplemental Response in Opposition to Defendants' Motion for Summary Judgment, FN 1 (Page 11).

7. Superior Court Civil Rule 56(c).

moving party.[8] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law to the circumstances.[9] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for a decision as a matter of law.[10] When a moving party through affidavits or other admissible evidence shows that there is no genuine issue as to any material fact, the burden shifts to the non-moving party to demonstrate that there are material issues of fact.[11]

### Discussion

■ Plaintiffs contend that the alleged advice offered by Dr. Smoot, in response to Mr. Henry's complaint of bad gas problems, to do some walking and/or receive an enema was in breach of the applicable standard of care. Plaintiffs seek to offer Dr. Smoot's alleged statements concerning the medical advice he gave to Mr. Henry through the testimony of Ms. Merrick. Ms. Merrick testified to what Mr. Henry told her concerning his alleged conversation with Dr. Smoot. Therefore, the Court has to examine the admissibility of Ms. Merrick's testimony, which explains an out-of-court statement made by an unavailable witness, Mr. Henry.

One issue regarding Ms. Merrick's testimony deals with the alleged conversation between Dr. Smoot and Mr. Henry. The conversation contains statements made by the Decedent to the Doctor concerning "bad gas pains" and statements made by Dr. Smoot concerning the medical advice he gave to Mr. Henry. Dr. Smoot does not recall the alleged conversation. The second issue regarding Ms. Merrick's testimony arises because Ms. Merrick's testimony articulates an out-of-court statement made to her by the Decedent.[12]

The Court should not consider inadmissible hearsay when deciding a Motion for Summary Judgment.[13] Therefore, the Court must address whether or not the testimony of Ms. Merrick, regarding the alleged conversation between the Decedent and Dr. Smoot, is admissible. If the Court concludes that Ms. Merrick's statement is admissible, then there would be a material fact in dispute concerning the aftercare provided by Dr. Smoot, individually, and it would therefore be inappropriate to grant Summary Judgment in favor of Dr. Smoot. However, if Ms. Merrick's statement is deemed inadmissible, then there would be no facts remaining in the record to link Dr. Smoot, specifically, to any alleged negligent aftercare, and Dr. Smoot would be entitled to judgment as a matter of law.[14]

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to

8. *Guy v. Judicial Nominating Comm'n,* 659 A.2d 777, 780 (Del.Super.1995).

9. *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).

10. *Wootten v. Kiger,* 226 A.2d 238, 239 (Del. 1967).

11. *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979).

12. The Court will assume, without deciding, that Dr. Smoot's alleged statements to Mr. Henry and Mr. Henry's alleged statements to

Dr. Smoot are admissible for purposes of this decision.

13. *Continental Cas. Co. v. Ocean Acc. & Guarantee Corp.,* 209 A.2d 743, 747 (Del.Super.1965).

14. Plaintiffs' alternate theory that Ms. Merrick's statement referencing Dr. Smoot or another doctor referred to above would have no legal effect if the statement is deemed inadmissible.

prove the truth of the matter asserted.[15] Hearsay is not admissible except as provided by law or by the Delaware Uniform Rules of Evidence.[16] The statement that the Decedent made to Ms. Merrick regarding what Dr. Smoot allegedly advised him is an out-of-court statement which was not made by a declarant while testifying at trial or a hearing.[17] Further, Mr. Henry's statement to Ms. Merrick is being offered to prove the truth of the matter asserted: That Dr. Smoot gave Mr. Henry the medical advice to walk around and/or receive an enema. Therefore, the statement of the Decedent is hearsay, and the statement is not admissible, unless the statement meets an applicable exception to the hearsay rule.

Plaintiffs argue that Mr. Henry's statement to Ms. Merrick falls within the State of Mind Exception, D.R.E. 803(3). D.R.E. 803(3) provides a hearsay exception for: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of the defendant's will."

■ Admission of statements that are simply perceptions or beliefs a victim has of events is not justified under the rationale for the state of mind exception.[18] In *Capano*, the Delaware Supreme Court explained that with respect to a statement that "I am afraid of D *because he is a maniac*" or "I am afraid of D *because he threatened me*" or "I am afraid of D *because he is going to kill me*," the statement of the declarant's then existing state of mind would not include anything but the assertion that "I am afraid." [19] The *reasons* why she was afraid cannot be characterized as assertions (i.e."statements") of her state of mind.[20] The Supreme Court concluded that the decedent's description of specific events involving the defendant and her opinion of the defendant reflect not on the decedent's "state of mind," but on her beliefs and memories of facts as she expressed them to her friends.[21] In *Capano*, the decedent's friend was going to testify that the decedent told her about an incident involving the decedent and the defendant.[22] The Supreme Court determined that the narrative of the incident is not a

15. D.R.E. 801(c).

16. D.R.E. 802.

17. Mr. Henry can obviously not testify at a trial or hearing, because Mr. Henry is deceased.

18. *Capano v. State*, 781 A.2d 556, 609 (Del. Supr.2001).

19. *Id.* at 609–610. The *Capano* case is not exactly on point factually with the case *sub judice* concerning the statement in question, but the Supreme Court's analysis of Rule 803(3) in *Capano* is relevant to show how limited the exception is.

20. *Id.* at 610.

21. *Id.* at 611 citing *State v. Fulminante*, 193 Ariz. 485, 975 P.2d 75 (1999) ("The statement must be limited to a declaration showing the state of mind and not include a description of the factual occurrence that engendered that state of mind.").

22. *Id.* (The Supreme Court continued in FN 140: To be admissible under Rule 803(3), the statement must reflect the declarant's state of mind *at the time the statement is made*. Thus, a statement reflecting the declarant's memory of a past state of mind cannot meet this contemporaneity requirement. For example, the decedent's statement to her friend that she was frightened during the garage incident is not admissible as a then existing state of mind, whereas the decedent's statements that she was upset with or afraid of the defendant at the time of the statement is admissible under the exception.).

state of mind—it is a memory of an event—and does not fall under Rule 803(3).[23]

Mr. Henry's statement to Ms. Merrick explaining that he informed Dr. Smoot that he was having bad gas pains and that Dr. Smoot suggested walking and/or an enema to relieve the pressure [24] is not admissible as an exception to the hearsay rule under Rule 803(3). Mr. Henry's statement to Ms. Merrick was a statement of Mr. Henry's perception of his conversation with Dr. Smoot (the event or incident), and the statement was not a statement of Mr. Henry's then existing state of mind. The Decedent's statement did not assert a state of his mind while making the statement to Ms. Merrick (for example, "I am in pain"). The statement merely explained a past incident where Mr. Henry allegedly spoke to Dr. Smoot. Mr. Henry's statement may tend to show the reasons why he did certain things (i.e. receive an enema or walk around), but the statement cannot be characterized as an assertion of Mr. Henry's state of mind. Even if Mr. Henry's statement to Ms. Merrick included an assertion of his then existing state of mind, the reasons why the declarant (Mr. Henry) had the particular state of mind are inadmissible under Rule 803(3).[25] Therefore, Mr. Henry's statement to Ms. Merrick is not admissible as an exception to hearsay under the State of Mind Exception (Rule 803(3)).

The Court will address the application of the Residual exception to Mr. Henry's statement, even though the argument was not raised. Rule 807 provides an exception to the hearsay rule where a statement has sufficient "circumstantial guarantees of trustworthiness" [equivalent to the exceptions in Rules 803 and 804], if the court determines (1) "the statement is offered as evidence of a material fact," (2) "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and (3) "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." [26]

The requirements in Rule 807 are construed narrowly so the exception does not swallow the hearsay rule.[27] The Rule was developed to "provide for treating new and presently unanticipated situations which demonstrate trustworthiness within the spirit of the specifically stated exceptions." [28] It provides for growth and development of the law of evidence in the hearsay area.[29] The Rule is to be used in exceptional and extraordinary circumstances.[30]

The Court finds that Mr. Henry's statement is not admissible under the narrowly construed Rule 807. If the Court were to allow such a statement to come in under the Residual Exception, the exception would tend to swallow the hearsay rule,

23. *Id.* at 611–612.

24. See Ms. Merrick's September 10, 2003 letter, which she reiterated in her August 4, 2005 deposition.

25. *Capano,* 781 A.2d at 610.

26. D.R.E. 807.

27. *Cabrera v. State,* 840 A.2d 1256, 1268 (Del. Supr.2004).

28. *State v. Walker,* 2005 WL 1654338, *2 (Del.Super.) citing Weinstein's Federal Evidence, § 807 App.01[5] (2d ed., 2005).

29. *Id.*

30. *Id.* at *2. citing *United States v. Trujillo,* 136 F.3d 1388, 1395 (10 Cir.1998).

because Mr. Henry's statement is not an unanticipated situation. In examining Mr. Henry's statement specifically, the circumstances surrounding Mr. Henry's statement does not rise to the level of trustworthiness required to invoke Rule 807. The statement was made to Ms. Merrick after Mr. Henry had gastric bypass surgery. The Decedent was suffering from pain and was taking pain medication at the time the statement was made. Also, the statement, as it pertains to Dr. Smoot, is not supported by corroborating testimony. In fact, the record tends to show that any aftercare communications that Mr. Henry may have had with a Doctor would have been with Dr. Miller, the physician who was on-call at the time. Therefore, Mr. Henry's statement to Ms. Merrick is not admissible as an exception to the hearsay rule under the Residual exception (Rule 807).

The Court finds that Mr. Henry's statement to Ms. Merrick is inadmissible hearsay. Therefore, the record is void of any facts linking Dr. Smoot to any negligent aftercare of Mr. Henry. Summary Judgment in favor of Dr. Smoot is appropriate.

Based on the foregoing, Defendant Dr. Smoot's Motion for Summary Judgment is *granted.* IT IS SO ORDERED.