# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE LIMA DELTA COMPANY,           )
TRIDENT AVIATION SERVICES,        )
LLC, and SOCIÉTÉ                   )
COMMERCIALE ET                    )
INDUSTRIELLE KATANGAISE,          )
                                  )
   Plaintiffs,     )
  v.                     )  C.A. No. 16C-11-241WCC CCLD
                                  )
GLOBAL AEROSPACE, INC.,           )
                                  )
   Defendant.       )
                                  )
                                  )

Submitted: June 22, 2017
Decided: October 5, 2017

**Defendant's Motion to Dismiss – GRANTED**

## MEMORANDUM OPINION

William R. Firth, III, Esquire, Martin Law Firm, LLC, 1521 Concord Pike, Suite 301, Wilmington, DE 19803. Joseph A. Martin, Esquire, Martin Law Firm, LLC, 6000 Sagemore Drive, Suite 6202, Marlton, NJ 08053. Attorneys for Plaintiffs, The Lima Delta Company, Trident Aviation Services, LLC and Société Commerciale et Industrielle Katangaise.

Neal J. Levitsky, Esquire, Seth A. Niederman, Esquire, Fox Rothschild LLP, 919 North Market Street, Suite 300, Wilmington, DE 19899. Jeffrey W. Moryan, Esquire, Connell Foley LLP, 85 Livingston Avenue, Roseland, NJ 07068. Attorneys for Defendant, Global Aerospace, Inc.

**CARPENTER, J.**

Before the Court is Global Aerospace, Inc.'s ("Defendant" or "Global")

Motion to Dismiss the Complaint for Conversion, Trespass to Chattels,

Negligence, Bad Faith and Other Relief ("Complaint") filed on behalf of The Lima

Delta Company ("Lima Delta"), Trident Aviation Services, LLC ("Trident"), and

Société Commerciale et Industrielle Katangaise ("Socikat") (collectively,

"Plaintiffs"). As set forth in this opinion, Defendant's Motion to Dismiss will be

GRANTED.

## I. BACKGROUND

This action for compensatory and punitive damages arises out of an

aerospace insurance provider's allegedly wrongful seizure, control, and storage of

the salvageable and valuable wreckage of an insured aircraft following a fatal

accident in the Democratic Republic of Congo ("DRC"). Plaintiffs' Gulfstream G-

IV aircraft (the "Aircraft"), a large-cabin intercontinental business jet, crashed on

February 12, 2012.[1] At the time of the accident, the Aircraft was insured under a

"Broad Horizon Aviation Insurance Policy" ("Policy") issued by Defendant.[2]

---

[1] Compl. ¶¶ 15, 20-24.
[2] *Id.* ¶¶ 9-11 (noting Policy period of June 22, 2011 to June 22, 2012). Global is a Delaware corporation with headquarters in London and U.S. offices in New Jersey. *Id.* ¶ 7.

## A. The Parties

The Aircraft was purchased by Lima Delta on May 4, 2011.[3] While Lima Delta is the registered owner of the Aircraft, the plane was operated pursuant to a trust agreement whereby Lima Delta, as "owner trustee," leased the Aircraft to Socikat, as trust beneficiary and "equitable owner," for use in the course of Socikat's business.[4] Socikat, an entity based and domiciled in the DRC, supplies support equipment to the mining industry in the DRC.[5]

Trident is the company that managed the Aircraft for Socikat. Trident arranged and provided contract flight crews, maintenance work, and flight support, among other aviation services.[6] Trident worked with Wells Fargo Insurance Services USA, Inc. ("Wells Fargo") in order to arrange insurance for the Aircraft.[7]

---

[3] *Id.* ¶ 5. Lima Delta is a Delaware Corporation, and the Aircraft is based in Wilmington, Delaware. *Id.* ¶¶ 3,5.

[4] *Id.* ¶¶ 3,5. This type of arrangement is apparently a common and permissible means of allowing non-U.S. residents to register aircrafts with the Federal Aviation Administration. *Id.*

[5] *Id.* ¶ 4.

[6] *Id.* ¶ 6.

[7] *Id.* ¶¶ 8-9. Originally, Trident arranged for Wells Fargo to add the Aircraft to a pre-existing policy underwritten by XL Aerospace which had been purchased for another plane Lima Delta owned in trust for Socikat. *Id.* ¶ 8. Because Socikat's needs required travel throughout the European Union, the Aircraft would need coverage that complied with the EU's mandated minimum of $250 million in liability insurance. *Id.* ¶¶ 9, 18. "Because XL Aerospace was unable to provide more than $150 million in liability coverage, Wells Fargo arranged for the issuance of a new policy underwritten by Global." *Id.* ¶ 9.

3

Plaintiffs ultimately purchased coverage from Global, a self-proclaimed "leading provider of aerospace insurance."[8]

## B. The Accident

On February 12, 2012, the Aircraft departed Goma, DRC for the Bukavu Kavumu Airport carrying nine passengers in addition to two captains. Having been cleared to land, the Aircraft touched down in Bukavu without issue. However, the brakes malfunctioned and the crew was unable to decrease the Aircraft's forward velocity. As a result, the Aircraft proceeded off the far end of the runway and continued through an unpaved overrun area before ultimately plummeting off a cliff and crashing at the bottom of a ravine.[9] The crew members and one passenger were killed in the accident.[10]

The allegations as to the events following the crash are somewhat unclear. Four days after the accident, Global retained Airclaims, Ltd. ("Airclaims"), an aviation claims surveyor, to investigate the crash site.[11] Global instructed Airclaims that all reports and correspondence relating to the investigation be forwarded to

---

[8] *Id.* ¶ 7 (quoting Global's website). Global is a Delaware corporation with headquarters in London and U.S. offices in New Jersey. *Id.*

[9] *Id.* ¶ 23.

[10] *Id.* ¶ 24.

[11] According to the Complaint, Airclaims provides "claims and risk management services to the aviation and aviation insurance industries." *Id.* ¶¶ 30-31 ("Global hired Airclaims…to act as its 'insurance representative and claim surveyor' in connection with the crash.").

4

Global. Plaintiffs were assured that Global's investigation of the accident was proceeding normally and would be concluded in short order.

As directed, Airclaims reported its findings to Global on March 19, 2012 ("Airclaims Report"). Airclaims found that the February 12, 2012 accident constituted a "Total Loss," but two Rolls-Royce Tay engines and an auxiliary power unit ("APU") suffered minimal damage and still retained value.[12] According to the Complaint, this information was not shared with Plaintiffs.

In April 2012, Global sought and secured a price quote for shipping the salvageable wreckage from the DRC to the United States. Global did not relay the quoted price to Plaintiffs. Instead, Global elected to store the wreckage in "non-climate-controlled shipping containers in the DRC."[13]

As of May 2012, Global had neither acknowledged nor disclaimed coverage for the accident under the Policy. Like much of the Complaint, the allegations as to Plaintiffs' ability to recover the Aircraft's wreckage are imprecise. According to Plaintiffs:

> Had Global accepted coverage and paid its insureds for the hull loss of the Aircraft, the wreckage would have become Global's property and Global would have had every right to abandon, waste and destroy the wreckage as it saw fit. However, unless and until Global agreed to pay the hull claim, the wreckage remained the plaintiffs' property, which

---

[12] *Id.* ¶ 36.
[13] *Id.* ¶¶ 38-40.

Global knew had substantial value. And by the time Global took possession of the wreckage, Global was already actively taking steps to dispute coverage. [14]

The Aircraft's "otherwise valuable, salvageable wreckage" was thus apparently "left to deteriorate in the DRC's profoundly inhospitable climactic conditions," without regard to either "manufacturers' published standards" or "commonly accepted industry standards for the removal, preservation and storage of such components."[15] Plaintiffs characterize all of Global's conduct as part of a scheme to avoid coverage. [16]

### C. The Georgia Action

On May 7, 2012, Global filed an action against Plaintiffs in the Superior Court of Georgia (the "Georgia Action") seeking rescission of the Policy or alternatively, that no coverage existed for the accident. "After years of vigorous litigation, Global secured…a judgment to the effect that it could rescind the policy, and that there was no coverage for the Plaintiffs' hull claim" in July 2016.[17]

---

[14] *Id.* ¶ 40.
[15] *Id.* ¶ 41.
[16] *See id.* ¶¶ 25-26. Unbeknownst to Plaintiffs, Global and Well Fargo had allegedly "commenced an urgent exchange of secret communications" hours after the accident "aim[ed] at denying coverage for the Accident under the Policy." *Id.* ¶ 25. Global is alleged to have obtained certain confidential information from Wells Fargo concerning the Plaintiffs and other policies unrelated to the Accident "for the purpose of advancing Global's strategic litigation interests to the detriment of the [P]laintiffs' interests." *Id.* While Wells Fargo apparently discouraged Plaintiffs from retaining legal counsel in connection with the accident, Global had engaged outside counsel to assist in their case against Plaintiffs. *Id.* ¶ 26.
[17] *Id.* ¶ 40.

6

According to Plaintiffs, "as Global's senior leadership admitted in the Georgia coverage litigation, in the absence of coverage, the wreckage has always been and remains Plaintiffs' property, wasting away in Global's possession in the DRC."[18] Had the engines and APU been removed, preserved, and stored properly, the two engines would presently be valued at $1.4 million each and the APU would be worth $125,000. Instead, the engines' current value is $200,000 each and the APU is worth approximately $20,000.[19]

As a result of the alleged diminution in value of the Aircraft's wreckage, Plaintiffs commenced the instant litigation in this Court on November 28, 2016. Defendant moves to dismiss the Complaint, contending the claims are barred by the applicable statute of limitations and *res judicata*. This is the Court's decision on that Motion.

## II. STANDARD OF REVIEW

Under Delaware Superior Court Civil Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[20] On a motion to dismiss, the Court accepts as true the well-pleaded allegations of the complaint and gives the plaintiff "the benefit of every reasonable inference to be

---

[18] *Id.*

[19] *Id.* ¶¶ 42-43 (citing sworn affidavit and deposition testimony of Daniel Pradel, Jr., President of Aviation & Marketing International, who testified in connection with the Georgia Action).

[20] *See* Super. Ct. Civ. R. 12(b)(6).

drawn from those allegations."[21] A complaint is "well-plead" if it puts the opposing party on notice of the claim being brought against it. "Allegations that are merely conclusory and lacking factual basis, however, will not survive a motion to dismiss."[22] Additionally, where certain documents are "integral to a plaintiff's claims, [they] may be incorporated by reference without converting the motion to a summary judgment."[23]

## III. DISCUSSION

### A. Documents Relied Upon in Motion to Dismiss

Plaintiffs, while expressly referencing (and, at times, quoting from) the Policy, the Georgia Action, and the Airclaim's Report, have not filed any supporting documentation as exhibits to their pleading. In its Motion to Dismiss, Defendant cites to and submits a number of materials purportedly demonstrating that Plaintiffs' claims are untimely and foreclosed by *res judicata*. Specifically, Defendant supports its Motion with documents from the record in the Georgia

---

[21] *See Great Lakes Chem. Corp. v. Pharmacia Corp.,* 788 A.2d 544, 548 (Del. Ch. 2001) (citing *In re USACafes, L.P. Litig.,* 600 A.2d 43, 47 (Del. Ch. 1991)). *See also Solomon v. Pathe Commc'ns Corp.,* 672 A.2d 35, 38-39 (Del. 1996) (citing *Grobow v. Perot,* 539 A.2d 180, 187 (Del. 1988)); *Precision Air v. Standard Chlorine of Del.,* 654 A.2d 403, 406 (Del. 1995) (citing *Diamond State Tele. Co. v. Univ. of Del.,* 269 A.2d 52, 59 (Del. 1970) and Super. Ct. Civ. R. 8(e)(1),(f)).

[22] *See Lagrone v. Am. Mortell Corp.,* 2008 WL 4152677, at *4 (Del. Super. Ct. Sept. 4, 2008) (quoting *Criden v. Steinberg,* 2000 WL 354390 at *2 (Del.Ch. March 23, 2000)). The Court is not "obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim ...." *See Malpiede v. Townson,* 780 A.2d 1075, 1083 n.19 (Del. 2001) (quoting *R.J.R. Services, Inc. v. Aetna Cas. and Sur. Co.,* 895 F.2d 279, 281 (7th Cir.1989)).

[23] *See Furnari v. Wallpang, Inc.,* 2014 WL 1678419, at *4 (Del. Super. 2014).

Action and from litigation Plaintiffs filed against Global in this Court in 2014 ("First Delaware Action"). The Court's ability to consider these matters in resolving the Motion must thus be addressed preliminarily.

Generally, when determining whether the presentation of matters outside of the pleadings will convert a motion to dismiss to a motion for summary judgment, the critical questions for the Court are "whether the extraneous matters are integral to and have been incorporated within the complaint and whether they have been offered...to establish the truth of their contents."[24] "Matters attached to a complaint, and incorporated by reference, are not 'extraneous' for purposes of Rule 12."[25] Similarly, when "a plaintiff chooses not to attach a document...to a complaint that raises claims based on the document...a defendant may properly attach a copy of the document to a motion to dismiss...."[26] Further, when documents accompanying a defendant's motion were clearly "consulted, relied upon, and quoted from extensively by the plaintiffs in drafting the complaint[,]" they are appropriately within the Court's consideration on a motion to dismiss.[27]

---

[24] *Prather v. Doroshow, Pasquale, Krawitz & Bhaya*, 2011 WL 1465520, at *3 n.36 (Del. Super. Ct. Apr. 14, 2011) (quoting *Mell v. New Castle County*, 835 A.2d 141, 144 (Del. Super. Ct. 2003)).

[25] *Lagrone*, 2008 WL 4152677, at *4.

[26] *See id.* (using the example of a contract in the context of a breach of contract claim).

[27] *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *12 (Del. Ch. June 29, 2005).

As mentioned above, Plaintiffs' Complaint includes several references to the Georgia Action and portions of the record in that litigation.[28] Plaintiffs expressly refer to and quote from the Policy and the Airclaims Report in discussing their insured/insurer relationship with Global, Global's allegedly tortious and negligent means of possessing, controlling, and storing the Aircraft wreckage, and Global's purported bad faith breach of the Policy. Notably, Plaintiffs' primary argument against dismissal is that the statute of limitations and *res judicata* cannot possibly bar its claims because "[u]nder the applicable insurance policy, th[e] salvage was properly *owned* and controlled by Global," such that "Plaintiffs had no claims to pursue" until the outcome of the Georgia Action in July 2016 "when it was decided that Global had no coverage obligations."[29]

Neither the record in the Georgia Action, nor the Policy can be fairly characterized as "extraneous" to the instant litigation. "By expressly referring to and so heavily relying on… documents in the…Complaint, plaintiffs [may] incorporate[] them by reference…."[30] Moreover, the dockets, pleadings, and transcripts from the Georgia Action and First Delaware Action are subject to

---

[28] Compl. ¶¶ 25-29, 40, 42-43.

[29] Pls.' Answ. Br. in Opp'n to Def.'s Mot. to Dismiss at 1-2 (emphasis added). "By operation of the decisions of the Georgia trial and appeals court, the salvage from the crash now belongs to Plaintiffs." *Id.*

[30] *See Albert*, 2005 WL 1594085, at *12 (quoting *In re Dean Witter P'ship Litig.*, 1998 WL 442456 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999)).

judicial notice.[31] Therefore, the documents are properly before the Court and their contents will be considered by the Court as indicated throughout this Opinion.

## B. Statute of Limitations

"A defense predicated on a statute of limitations may be brought by motion to dismiss when the complaint itself shows that the action was not brought within the statutory period."[32] The parties agree that, under 10 *Del. C.* § 8106, Plaintiffs were required to file their Complaint within "3 years from the *accruing* of the cause of such action."[33] However, the parties are in dispute as to when Plaintiffs' claims accrued.

Generally, a cause of action "accrues" at the time of the wrongful act, even if the plaintiff is ignorant of the wrong.[34] "The 'wrongful act' is a general concept that varies depending on the nature of the claim at issue:"

---

[31] *Lagrone*, 2008 WL 4152677, at *4 (finding pleadings and transcripts subject to judicial notice as part of official court record). *See also Aequitas Sols., Inc. v. Anderson*, 2012 WL 2903324, at *3 (Del. Ch. June 25, 2012) (taking judicial notice of a pleading filed in a related action); *Prather*, 2011 WL 1465520, at *1 n.2 ("For purposes of the instant motion to dismiss, this Court takes judicial notice of the federal docket of the Pennsylvania litigation and the foregoing decision of the Court of Appeals for the Third Circuit."); *Nelson v. Emerson*, 2008 WL 1961150, at *2 (Del. Ch. May 6.2008) (taking judicial notice of "documents filed in the related federal court proceedings" in addressing a motion to dismiss); *In re Career Educ. Corp. Derivative Litig.*, 2007 WL 2875203, at *9 (Del. Ch. Sept. 28, 2007)("When considering a motion to dismiss, the court also may take judicial notice of publicly filed documents, such as documents publicly filed in litigation pending in other jurisdictions.").

[32] See, e.g., Brooks v. Savitch, 576 A.2d 1329, 1330 (Del. Super. Ct. 1989) (citing Patterson v. Vincent, 61 A.2d 416 (Del. Super. 1948)).

[33] 10 *Del. C.* § 8106(a).

[34] *See Kaufman v. C.L. McCabe & Sons,* 603 A.2d 831, 834 (Del.1992) ("Traditionally, a plaintiff's ignorance of injury or loss will not delay the accrual of [the] cause of action."); *Airport Bus. Ctr. V LLLP v. Sun Nat. Bank*, 2012 WL 1413690, at *7 (Del. Super. Ct. Mar. 6, 2012) ("The statute of limitations begins to run when a plaintiff's claim accrues, which occurs at the moment of the wrongful act and not when the effects of the act are felt.").

11

For breach of contract claims, the wrongful act is the breach, and the cause of action accrues at the time of breach. For tort claims, the wrongful act is a tortious act causing injury, and the cause of action accrues at the time of injury. Where the claim is one for indemnification or contribution for damages paid to a third party, a cause of action accrues only after the party seeking indemnification has made payment to the third party.[35]

The Complaint seeks damages for the "profound diminution in value of the Aircraft's wreckage" and includes claims for conversion, trespass to chattels, negligence, and bad faith breach of contract related to Defendant's alleged wrongful possession, removal, control, use, and storage of the wreckage.[36] The accident occurred in February 2012 and all of the wrongful conduct is alleged to have commenced shortly thereafter. Indeed, Plaintiffs' claim Defendant "has exercised physical control and dominion over the Aircraft's wreckage at all times since the February 12, 2012 crash[]" without "any lawful right" to do.[37] At the latest, the conduct pertaining to the negligent storage of the wreckage appears to have occurred in the spring of 2012.[38] As a result, Defendants argue Plaintiffs' claims accrued in 2012 and, because the Complaint was not filed until 2016, it much be dismissed as untimely.

---

[35] *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005) (citing *Ambase Corp. v. City Investing Co.*, 2001 WL 167698, at *14 n. 4 (Del. Ch. Feb. 7, 2001) and *Kaufman*, 603 A.2d at 834..
[36] Compl. ¶¶ 53, 59, 63, 69.
[37] Compl. ¶¶ 44-45.
[38] *Id.* ¶¶ 39-40.

Plaintiffs argue in response that their claims could not have been brought-- and thus, had not yet accrued—until July 12, 2016, when the Georgia Court of Appeals affirmed summary judgment in favor of Global declaring there was no coverage under the Policy and permitting rescission of the Policy.[39] According to Plaintiffs, they lacked "ripe and viable salvage claims against Global" until this time because they "had no damages…until the Georgia courts determined they owned the now damaged wreckage."[40] At argument, counsel for the Plaintiffs explained this theory in terms of: if the Georgia courts found Plaintiffs had coverage, Global would keep the wreckage and Plaintiffs would get "a check" and if they did not have coverage, Plaintiffs would have to go "pick up the mess" in the DRC.[41] Counsel also admitted that, in 2012, Plaintiffs *knew* the wreckage was not being stored properly.[42] However, they maintain this action was not ripe until the Georgia litigation concluded in 2016.

In support of their position, Plaintiffs cite cases in which Delaware Courts discussed accrual for statute of limitations purposes in the context of indemnification and bad faith failure to settle claims.[43] In particular, Plaintiffs cite

---

[39] Pls.' Answ. Br. in Opp'n to Def.'s Mot. to Dismiss at 5-6.

[40] *Id*. at 6-8.

[41] Hearing Tr. at 31:1-8.

[42] Id. at 31:17-21, 32:1-7.

[43] *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271 (Del. 2016); *Branin v. Stein Roe Inv. Counsel, LLC*, 2015 WL 4710321 (Del. Ch. July 31, 2015); *Reid v. Thompson Homes at Centreville, Inc.*, 2009 WL 5810220 (Del. Super. Sept. 16, 2009) (Order).

*Branin v. Stein Roe Investment Counsel, LLC* for the proposition that a claim does not accrue or mature for statute of limitations purposes until the plaintiff is "able to bring suit."[44] In *Branin*, the issue before the Court of Chancery was whether the plaintiff employee's claim for indemnification from his employer "for expenditures related to litigation begun in 2002, but not resolved with finality until 2012" was time-barred.[45] That case involved a contract which provided, as prerequisites to indemnification, that the employee have acted in good faith and within his or her authority.[46] The Court found the statute of limitations did not begin to run until the underlying litigation was resolved, because the plaintiff could not have enforced his indemnification rights under the contract "until the nature of his conduct underlying the [litigation] was established."[47]

Plaintiffs also cite *Connelly v. State Farm Mutual Auto. Ins. Co.*, in which the Delaware Supreme Court considered, as an issue of first impression, when a "bad-faith failure-to-settle claim" against an insurer accrued for purposes of the three-year statute of limitations.[48] The Court found such claims accrue only when there is a final and non-appealable excess judgment against the insured. The Court rejected the insurer's position that accrual of bad-faith failure to settle claims be

---

[44] Pls.' Answ. Br. in Opp'n to Def.'s Mot. to Dismiss at 7.
[45] *Branin v. Stein Roe Inv. Counsel, LLC*, 2015 WL 4710321, at *1 (Del. Ch. July 31, 2015)
[46] See id. at *4.
[47] See id. at *4, 6.
[48] *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1274 (Del. 2016).

measured according to the traditional "time of the wrongful act" standard (and therefore, at the time settlement was refused) because such approach would result in claims accruing before the plaintiff could even plead the required element of damages, *i.e.*, the excess judgment. Further, the Court noted that the cases State Farm relied upon were "outside of the insurance context" and, more importantly, "[did] not involve a contractual obligation to make another party whole that only arises once certain conditions are met." In this regard, the Court likened insurance claims to indemnity claims, stating:

> Insurance claims are a type of indemnity claim because in both cases, the obligation to cover the indemnified party's costs arises only once certain conditions occur—in the context of a bad-faith suit against an insurer, a final and non-appealable excess judgment as to the third-party claim. …Because of the similarities between indemnity and insurance claims, the same policies of serving litigative efficiency and preventing waste of judicial resources that have led Delaware courts to determine that an indemnity claim accrues when there is a final judgment apply with analogous force to insurance claims and support our determination.[49]

Defendant argues that Plaintiffs' cited case law is inapposite because Plaintiffs are not suing for indemnification or contractual relief, but in tort. Unlike in the cases cited by Plaintiffs, Global argues they owe no contractual duties to Plaintiffs because the Georgia court ruled Global was entitled to rescind the Policy. Further, Plaintiffs' tort claims are not dependent on the occurrence of certain

---

[49] Id. at 1280-81.

15

contractual conditions. Additionally, Defendants request that Plaintiffs be judicially estopped from challenging ownership of the wreckage, based on their allegations in the Complaint, in the First Delaware Action, and in the Georgia Action.

The Court agrees with Defendant, finding Plaintiffs' position not only inconsistent, but confusing in multiple respects. Plaintiffs repeatedly allege throughout their Complaint that, at all relevant times, they were the sole, lawful owners of the Aircraft's wreckage. There is no indication Global ever claimed "ownership" of the salvage pursuant to the Policy or otherwise. The Plaintiff has cited no provision in the insurance policy that would reflect that Global had possession and ownership rights to the wreckage after the accident. Instead, Plaintiffs knew, as of May, 2012, that Global had elected to store the aircraft wreckage in DRC. They also knew as of May of 2012 that Global was pursuing an action in Georgia to have the Policy rescinded as invalid. When the Georgia court issued its decision, Plaintiff could not seek indemnification under the rescinded Policy and thus the claims filed are for damages in tort and for breach of the implied covenant. Plaintiffs have provided no relevant authority justifying departure from Delaware's well-established rule that such claims accrue at the time of the alleged wrong.

16

Even accepting Lima Delta's allegation as true, if Global inappropriately took the aircraft parts and deprived them of their use or benefit, that conversion occurred sometime in the spring of 2012. This is when the aircraft engines and power unit were stored improperly as asserted by Plaintiff. If Lima Delta believed that this was their property and Global was improperly or illegally taking it, it was at that point they were required to take some action, and it is when the statute of limitations began to run. The subsequent insurance coverage litigation is simply not relevant to the conduct that forms the basis of this tort litigation.

In essence Plaintiffs have failed to take appropriate action to protect the property rights that they so vehemently claim in the Complaint and have simply waited hoping the insurance coverage issue would resolve in their favor. This allowed them to avoid the expense of either safeguarding the wreckage which they assert has always been their property or shipping it to another location. No one disputes that the wreckage was Lima Delta's property and if Global took action to harm it, then Lima Delta was required to act when the harm occurred or within three years of that event. The Court finds that the three-year statute of limitations

17

has run and thus the Complaint must be dismissed. Defendants' Motion is hereby

GRANTED.[50]

**IT IS SO ORDERED.**

Judge William C. Carpenter, Jr.

---

[50] As a result of the statute of limitations decision, the Court need not address the *res judicata* assertions in Defendant's Motion.